**Alexander Robert NAGY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1285S538.

Supreme Court of Indiana.

March 25, 1987.

William D. McCarty, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Alexander Robert Nagy was found guilty by a jury in the Madison Circuit Court of robbery, a class B felony, theft, a class D felony, and escape, a class D felony. He was further adjudged to be an habitual offender. Appellant was sentenced by the trial court to ten (10) years for robbery, two (2) years for theft, and four (4) years for escape. The robbery sentence was enhanced by thirty (30) years due to the habitual offender finding. The sentences for robbery and theft were ordered to be served concurrently and the sentence for escape was to be served consecutively, for a total sentence of forty-

four (44) years. All sentences were ordered to be served consecutively to the sentence Appellant was already serving.

Appellant raises six issues for our review in this direct appeal:

1. denial of a fair trial due to the shifting of his place of confinement;

2. error in refusing Appellant's request to peremptorily challenge jurors;

3. refusal of Appellant's tendered final instructions No. 11, 13, and 14;

4. misconduct of Prosecuting Attorney during closing argument;

5. improper sentencing; and

6. whether the verdict was contrary to law.

On November 16, 1983, Appellant and four other prisoners escaped from the Indiana State Reformatory in Pendleton, Indiana. Part of the escape plan required that someone pick them up in an automobile and take them to a house they considered safe. The automobile did not show up so the escapees looked for a place to steal an automobile and some money. At approximately 7:00 p.m., that same day, one of the escapees entered the Dairy Queen on Indiana 38 near Pendleton, bought some items, then left. He returned about fifteen minutes later, accompanied by Appellant and another man. One of the men told the employees not to scream, and announced a robbery. Another man came over the counter and grabbed a knife from the rear counter. The escapees emptied the cash registers and cut the telephone lines. They also forced another employee to give them her car keys and took her car. Before Appellant and the others drove off, they damaged a nearby pay phone.

About an hour later, at around 8:00 p.m., the stolen car was stopped by police near 96th Street and Allisonville Road, in Indianapolis. Appellant and one other man were captured but two of the others escaped and later were captured. Appellant was searched and found to be in possession of about one-hundred and thirty ($130.00) dollars from the Dairy Queen robbery. An employee of the Dairy Queen who was present during the robbery was brought and identified Appellant as one of the persons who robbed the Dairy Queen and stole the car. Appellant admitted participating in the robbery and escaping from the reformatory at Pendleton. The knife taken from the Dairy Queen and used in the robbery was found in a field adjacent to the Dairy Queen a few days later. At trial, Appellant asserted the defense of insanity, alleging he suffered from an irresistible impulse to escape which precluded him from forming the requisite intent to commit the crimes.

I

█ Appellant claims that during the time he was awaiting trial on these charges, his place of confinement was shifted to various places, depriving him of an opportunity to have meaningful consultation with his attorney. Appellant speaks in general terms and does not give precise dates and times of transfers nor does he point out in what way his defense was lacking due to this problem. It appears from the record that between January 16, 1984, when Appellant was charged, and August 6, 1985, the time of his trial, Appellant was transferred from the Reformatory at Pendleton to the Madison County Jail. After a short time, he was transferred to the Indiana State Prison. It also appears from the record that, due to some trouble or controversy in which Appellant was involved while in the Madison County Jail, he was transferred from there to the State Prison at Michigan City. In fact, there was evidence, including Appellant's own testimony, that he tended to be disruptive, and constantly attempted escape. There is no showing that the transfer was made for the purpose of preventing Appellant from conferring with counsel, or from preparing his defense. Nor is there any showing, other than Appellant's general allegations, that transfers had this effect. There is therefore no reversible error on this issue. *See Hurley v. State* (1983), Ind., 446 N.E.2d 1326.

II

Appellant claims the trial court erred by refusing Appellant's request to make addi-

tional peremptory challenges to two of the jurors. The trial court had called counsel for both parties to the bench and asked them to make their challenges to any jurors at that time. Defense counsel wrote one juror's name on a piece of notebook paper and that juror's name was struck by the judge. No additional challenges were made. After completing examination of the additional juror by all parties, the parties accepted the jury and the judge swore the jury. The court advised the jury as to the conduct expected of them while out of the courtroom, and while excused for lunch. At this point, defense counsel informed the judge there had been a misunderstanding between counsel and Appellant and that Appellant wished to make further peremptory challenges. Defense counsel informed the judge that at the time challenges were made, Appellant thought those challenges were for cause, and Appellant did not know that he was to make peremptory challenges at that time. Counsel, however, stated he was aware that peremptory challenges were to be made when the court requested them and, in fact, the challenge he made was a peremptory one. He stated, he felt he did not fully explain to his client that all challenges were to be made at that time and there would be no further opportunities to challenge. Counsel admitted there were no grounds for challenging any of the jurors for cause. The court refused any further challenges, claiming all parties had had ample opportunity to examine the jurors and make their challenges.

■ We first note that although parties have a right to peremptory challenges in selecting a jury, they are subject to reasonable regulation by the trial court. *McBrady v. State* (1984), Ind., 459 N.E.2d 719; *Marsh v. State* (1979), 272 Ind. 178, 396 N.E.2d 883. We held in both *McBrady* and *Marsh* that the trial court properly refused additional peremptory challenges after the parties were given an opportunity to examine prospective jurors, witnessed the examination by the opposing party, and made their challenge pursuant to local court rule. *McBrady* at 722; *Marsh* at 180, 396 N.E.2d at 885. Appellant had that opportunity here. More importantly, how-

ever, the trial court here was not in a position to grant further examination and challenges of prospective jurors. By assent of all parties, the jury was sworn, the trial began, and Appellant was in jeopardy. It therefore would have been necessary for the court to withdraw the submission of the cause to the jury and begin all over again. *Maddox v. State* (1951), 230 Ind. 92, 102 N.E.2d 225. No such motion was made, nor is that issue even discussed by Appellant in this appeal. There is, therefore, no merit to Appellant's contention that the trial court erred on this issue.

### III

■ Appellant claims the trial court erred in refusing to give his tendered instructions 11, 13, and 14, which dealt with the defense of not guilty by reason of insanity. In reviewing this issue, we consider whether the tendered instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions given. *McKean v. State* (1986), Ind., 500 N.E.2d 1184, 1186; *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1161, *cert. denied* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851.

The three instructions tendered by Appellant were brief statements of law. In our opinion their legal accuracy was questionable because they could have confused the jury. Furthermore, we find the trial court thoroughly and correctly instructed the jury on the subject of insanity. The trial court properly refused to give Appellant's tendered instructions.

### IV

Appellant contends error was committed due to the Deputy Prosecutor's misconduct during closing arguments. The alleged misconduct consisted of improper comments on the evidence, and improper comments as to the witnesses' veracity. Appellant failed to bring this to the attention of the trial judge by objection or motion during the arguments. Failure to complain of

alleged error at trial in a timely fashion constitutes waiver. *Ard v. State* (1985), Ind., 483 N.E.2d 64, 65; *Bivins v. State* (1982), Ind., 433 N.E.2d 387, 391. Appellant admits this is true but claims the Deputy Prosecutor's remarks amounted to fundamental error. Fundamental error is error such that, if not rectified, would be a denial of fundamental due process. *Foster v. State* (1985), Ind., 484 N.E.2d 965, 967. As stated in *Nelson v. State* (1980), 274 Ind. 218, 409 N.E.2d 637:

> "To be characterized as fundamental error and thus to transcend our procedural requirements the error must be blatant and the potential for harm must be substantial and appear clearly and prospectively."

*Nelson* at 220, 409 N.E.2d at 638; *Foster*, 484 N.E.2d at 967. There is no fundamental error here.

■ In final argument it is proper for counsel to argue and discuss both the law and the evidence and all reasonable inferences which may be drawn therefrom, including argument as to positions or conclusions based on the attorney's analysis of the evidence, so long as the attorney does not imply personal knowledge independent of the evidence. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973, 976. The prosecutor may comment on the credibility of the witnesses as long as the assertions are based upon reasons which arise from the evidence. *Beard v. State* (1981), Ind., 428 N.E.2d 772, 775. Some examples of statements made by the prosecutor, which Appellant claim were expressions of personal opinion, were:

> "Was there a fear or a threat of bodily harm. I think there was. I think so.
>
> \*    \*    \*    \*    \*    \*
>
> "But, is that insanity, as we think of it, the law. Or in general every day life. Is that insanity? I think not."

Although the Prosecutor expressed his personal opinion, he did not infer he had information outside the evidence that convinced him of Appellant's guilt. Rather, he was commenting on the credibility of the evidence. We do not view this as error meriting reversal.

## V

■ Appellant next claims the trial court made insufficient findings of aggravating circumstances which would merit enhancing his sentences or imposing consecutive sentences.

It is within the discretion of the trial court to increase or decrease a presumptive sentence. *Smith v. State* (1986), Ind., 491 N.E.2d 193, 196; Ind.Code § 35–38–1–7 (Burns 1985). The record must show the judge considered the facts of the specific crime and the relation of the sentence to the objectives to be served by that sentence. *Smith*, at 196; *Allen v. State* (1983), Ind., 453 N.E.2d 1011, 1012. The only sentence the judge enhanced here was the sentence for escape. Escape is a class D felony, Ind.Code § 35–44–3–5 (Burns 1985), providing for a two-year term which the judge is authorized to enhance by two years. Ind.Code § 35–50–2–7 (Burns 1985). The trial judge imposed a sentence of four years. He cited as reasons that Appellant had exhibited a continuing pattern of escape from authority, and that the imposition of a lesser sentence would depreciate the seriousness of this crime. Although these statements of reasons are brief, we find them sufficient under the facts and circumstances here.

■ The evidence was that Appellant escaped from jails or prisons at least four times, and attempted escape fifty or sixty times. He stated he would attempt to escape again in the future since that would be the only way he could expect to get out of prison considering the lengthy sentences he was serving. All the other sentences Appellant received were based on the presumptive terms. Further, the trial court properly imposed consecutive sentences even if the reasons given lack detail and explanation. Ind.Code § 35–50–1–2 (Burns 1985) provides:

> Consecutive and concurrent terms.—(a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.
>
> (b) If a person commits a crime:

(1) After having been arrested for another crime; and

(2) Before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime; the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

Since Appellant committed all of these crimes while imprisoned for other crimes, section (b)(2) of this statute requires that his terms be consecutive. We find Appellant was properly sentenced.

## VI

■ Finally, Appellant claims the verdicts were contrary to law. His argument is based on the fact that he presented unrefuted evidence that he was obsessed with the idea of escape, had an irresistible impulse to escape, and was therefore so insane that he could not have formed the necessary intent to commit the various crimes with which he was charged. We view Appellant's argument as one challenging the sufficiency of the evidence. A claim of sufficiency of the evidence on the question of sanity is treated on appeal as any other sufficiency claim. *Mayes v. State* (1982), Ind., 440 N.E.2d 678; *Gardner v. State* (1981), 275 Ind. 655, 657, 419 N.E.2d 749, 750. We do not reweigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Id.* When a defendant enters a plea of not guilty by reason of insanity, he bears the burden of proof on the issue by a preponderance of the evidence. *Green v. State* (1984), Ind., 469 N.E.2d 1169, 1171; Ind.Code § 35-41-4-1(b) (Burns 1985). If there is substantial evidence to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt, the jury's verdict will not be disturbed. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937. The task of weighing evidence on the issue of insanity belongs solely to the trier of fact. *Resnover v. State* (1982), Ind., 434 N.E.2d 78, 81. All evidence which has a logical bearing on a defendant's sanity, including his past behavior, sobriety, and behavior on the day of the offense, is competent on the issue of sanity. *Lock v. State* (1980), 273 Ind. 315, 323, 403 N.E.2d 1360, 1367; *Lynn v. State* (1979), 271 Ind. 297, 302, 392 N.E.2d 449, 453.

The witnesses presented to support Appellant's contention that he acted pursuant to an irresistible impulse, consisted of Appellant and three cellmates. The testimony of the three cellmates showed that Appellant continually plotted escape. He devised many methods of escape, some of which were successful. Appellant's own testimony was that he had escaped from prison at least four times and had plotted escapes fifty or sixty times. He told the jury that if he was returned to prison he would continue his attempts to escape, and that he would not hesitate to injure or kill someone in order to succeed. Appellant stated that the reason he continued to attempt escape was that it was the only way he could get out of prison. He said he was serving a life term in addition to other terms and expected additional time on conviction of these crimes. He knew he would not be subject to parole or release for a very long time. Since he did not want to stay in prison for the rest of his life, his only way of leaving was to escape. The jury could reasonably infer from this that Appellant did not have an irresistible impulse amounting to insanity, but that his obsession to escape was to serve his own purposes and comforts.

Furthermore, the evidence clearly shows that Appellant's escapes were well planned. Routes were planned and contingencies considered, revealing evidence of a rational thought process. When one of the escapees in this incident was injured, and the car which was to wait for them did not show up, a decision was made to rob a nearby Dairy Queen. The escapees planned to get traveling money and steal an automobile so that they might arrive at a destination they considered a safe hiding place. One of the escapees entered the Dairy Queen and spent several minutes looking over the place. Then Appellant with the other escapees then entered and committed the robbery and theft. Phone lines were cut on

both the Dairy Queen phone and a pay phone. There was sufficient evidence presented to the jury to support the jury's conclusion that Appellant was sane. We therefore find the guilty verdicts sufficient as a matter of law.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.