Morris Edward SUTTON,
(Defendant Below),

v.

STATE of Indiana, (Plaintiff Below).

No. 71A04–9003–CR–118.

Court of Appeals of Indiana,
Fourth District.

Nov. 27, 1990.

Rehearing Denied Feb. 13, 1991.

Stephen G. Drendall, South Bend, for defendant/appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for plaintiff/appellee.

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, Morris E. Sutton, appeals from his conviction by jury trial for Battery, a class C felony. We affirm.

### Issues

Defendant presents two (2) issues for our review, which we restate as follows:

I. Whether the trial court erred when it denied Defendant's Motion for a Mistrial after the State used two (2) of its peremptory challenges to remove prospective black jurors.

II. Whether the trial court erred in its sentencing of the Defendant.

### Facts and Procedural History

On November 13, 1988, Defendant attacked Sally Carlin (Carlin) in a gym at the Family and Children's Center in Mishawaka, Indiana. He grabbed her from behind, dragged her to the floor, and repeatedly struck her. During the attack, Defendant said "kill, kill." Carlin awoke in the men's restroom next to the gym, and discovered that her jeans and underwear had been removed.

Defendant was a resident at the Center. Prior to the attack, he had told several other residents that he wanted to attack and rape Carlin (who worked there as a Youth Treatment Specialist).

On December 20, 1988, the St. Joseph County Prosecutor's Office filed an Information, which charged Defendant with Battery, a class C felony. The matter was eventually set for a jury trial at 10:00 a.m. on October 30, 1989. During *voir dire*, the State used two peremptory challenges to strike black jurors. Defendant, who is also black, then moved for a mistrial, which was denied. The trial proceeded and the jury found the Defendant guilty as charged.

After the trial court entered judgment, the Defendant became unruly and disobedient. He deliberately knocked a water bottle off a table, and cursed at the trial judge after being warned to "settle down." The court held him in contempt of court for his "contemptuous conduct" and "obstructing the proceedings," and ordered him to serve thirty days "beginning *instanter,* which punishment would not be credited toward any sentence he receives."

Thereafter, a sentencing hearing was held on November 27, 1989. Defendant received an eight year sentence, along with credit for the 352 days he was in jail prior to trial. The trial court then suspended the sentence and placed Defendant on probation for eight years. As a condition of probation, the court ordered the Defendant to serve "a term of imprisonment of seven years consecutive time at an appropriate facility," and recommended "either a hospital for the treatment of mental or emotion-

al disorders ... [or] maximum security." In addition, the court ordered that "the time served of 352 days shall not apply to the term of imprisonment ordered as a condition of probation."

### Discussion and Decision

### I

Defendant first argues that the trial court erred when it denied his Motion for a Mistrial. He claims that "[t]he State's removal of two of the three black veniremen without cause was grounds for a mistrial," and states that "[n]o race-neutral reason for their removal was given [by the State]." Defendant also states that "[t]hese circumstances give rise to a presumption the strikes were motivated by racial prejudice, in violation of [his] constitutional rights to equal protection of the law, and [his] rights under the Constitutions of the United States and Indiana to trial by an impartial jury."

 The law is well-established that a black defendant is denied equal protection of the law when he is put on trial before a jury from which members of his own race have been purposefully excluded. *E.g., Strauder v. West Virginia,* 100 U.S. 303, 305, 25 L.Ed. 664 (1880); *Batson v. Kentucky,* 476 U.S. 79, 85–86, 106 S.Ct. 1712, 1716–17, 90 L.Ed.2d 69 (1986). To establish a *prima facie* case of purposeful discrimination in the selection of a jury, the defendant must satisfy the following three-prong test: (1) he is a member of a cognizable racial group; (2) the prosecutor has peremptorily challenged members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor excluded prospective jurors because of their race. *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–24; *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31; *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 88–89. Once the defendant makes a *prima facie* showing, the burden shifts to the prosecutor to come forward with a neutral explanation for challenging the black jurors. The prosecutor's explanation need not rise to the level of a challenge for cause. The trial court will then have the duty to determine whether the defendant has established purposeful discrimination. *Id.*

 We also note that the trial court is vested with broad discretion and responsibility to regulate *voir dire,* and its decision as to mistrial motions will be reversed only on a showing of manifest abuse of discretion and denial of fair trial. *Hall v. State* (1986), Ind., 497 N.E.2d 916, 918; *Stamps v. State* (1987), Ind., 515 N.E.2d 507, 510, *reh. denied.*

 The trial court did not err or abuse its discretion in denying Defendant's Motion for a Mistrial. Defendant failed to satisfy all three prongs of the test set forth in *Batson.* While he established the first two prongs (he is black and the prosecutor did remove two blacks from the jury), he failed to present any evidence to satisfy the third prong. Indeed, the facts and circumstances of this case do *not* indicate purposeful racial discrimination. We note that approximately thirty prospective jurors were called and questioned during *voir dire,* three of which were black. The prosecutor used four of his peremptory challenges to remove two blacks and two whites from the jury panel. The final jury had one black member. As noted by the Indiana Supreme Court in *Phillips,* the removal of black jurors by the use of peremptories does not, by itself, raise an inference of racial discrimination. 496 N.E.2d at 89.

We also note that there is nothing in the record to indicate that the prosecutor removed the jurors because of their race. The first prospective black juror removed indicated that he had gone to school with Dewitt Menyard, a potential witness for the State. He also indicated that his brother had been shot and killed about eight years earlier, that there had been an arrest and a trial, but that he "didn't keep up with the case" or even know whether there had been a conviction. The second black juror removed indicated that she was retired, but had been a nurse's aide at a hospital and a private home. Because the Defendant has failed to satisfy the third prong of the *Batson* test, the burden never shifted to the prosecutor to come forward with a race-neutral reason for the use of his per-

emptories. *Phillips,* 496 N.E.2d at 89; *Stamps,* 515 N.E.2d at 509–510.

## II

■ Defendant next argues the trial court erred "in denying [him] credit for time served in custody in this cause awaiting trial and sentencing." In particular, he claims that "[t]his was Class I time, for which he [should] receive an additional day's credit against his sentence for each day served," and that "[t]he trial court, in ordering seven years incarceration but denying application of the 352 days toward this sentence, has sought to give [him] a period of incarceration greater than what actually would be served had he been imprisoned for eight years, the maximum sentence allowed by law."

We disagree with Defendant. The trial court did *not* err in its sentencing of Defendant. Defendant received eight years (the maximum sentence allowed by Ind.Code 35–50–2–6), along with credit for the 352 days he spent in jail prior to trial. The trial court then suspended the sentence and placed the Defendant on probation for eight years (as permitted by I.C. 35–50–2–2). As a condition of the probation, the court ordered Defendant to serve "a term of imprisonment of seven years consecutive time at an appropriate facility." The law is clear that a trial court may suspend a sentence, place a defendant on probation, and then order a term of imprisonment as a condition of probation. *See,* I.C. 35–50–2–2; I.C. 35–38–2–2(c); *McVey v. State* (1982), Ind.App., 438 N.E.2d 770, 773.

Further, the imprisonment ordered in this case is within the maximum sentence allowed by I.C. 35–50–2–6, which provides that a person who commits a class C felony shall be imprisoned for not more than eight years. Assuming that Defendant remains in Class I, he will be imprisoned for three and one-half years of his eight year sentence. Even if we include the 352 days he spent in jail before trial, the total imprisonment involved is still less than four and one-half years.

There is also no problem with the probationary period, as the trial court's order makes clear that it ends on the same date that the eight year sentence does. Therefore, the probation ordered by the court does not run afoul of the pertinent statute, which requires that the probation "end not later than the date the suspended sentence expires." *See,* I.C. 35–50–2–2(c).

With respect to the time spent in jail prior to trial, the trial court also ordered that "the time served of 352 days shall not apply to the term of imprisonment added as a condition of probation." No statute or other law required the court to also credit the time served before trial towards the probation it ordered for Defendant. While the Defendant believes that this fact "is of no import," we strongly disagree. It is not our job to judicially legislate new law on this point by imposing such a requirement on trial courts. That is a matter for the Legislature. *See, Bond v. State* (1980), 273 Ind. 233, 403 N.E.2d 812, 816; *Lowe v. State* (1973), 260 Ind. 610, 298 N.E.2d 421, 423.

We also note that if there were a statute requiring that such credit be given towards probation, then the overall penalty imposed in this case would exceed the statutorily prescribed limits for the offense in question, and would be an illegal sentence. *E.g., Bedwell v. State* (1985), Ind., 481 N.E.2d 1090, 1092. However, because this specific matter has not been addressed by the Legislature, the trial court did not violate the limits set forth in I.C. 35–50–2–6. In the absence of such a statute, the matter is within the discretion of the trial court, which in this case fashioned an appropriate and rehabilitative sentence for the Defendant. As noted by the Indiana Supreme Court in *Gary v. State* (1984), Ind., 471 N.E.2d 695, 699–700, "[s]entencing is conducted within the discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion." We find no error or abuse of discretion as to this issue.

Affirmed.

CONOVER, J., concurs.

BAKER, J., concurs in part and dissents in part with opinion.

BAKER, Judge, concurring in part; dissenting in part.

Although I concur with the majority's disposition for Issue I, I cannot concur with the affirmance of the illegal sentence disposed of in Issue II. Their decision deprives Sutton of 704 days of time he has already spent in jail pending the disposition of this charge.

I acknowledge the trial court may suspend a sentence, place the defendant on probation, and order the defendant to serve a period of imprisonment as a condition of probation. *McVey v. State* (1982), Ind. App., 438 N.E.2d 770. The trial court cannot, however, suspend a sentence that has already been executed. Sutton received an eight-year sentence, the maximum sentence allowed for battery, a Class C felony. *See* IND.CODE 35-50-2-6. The trial court then purported to give Sutton credit for the 352 days he spent in jail pending the disposition of this case. Sutton received Class I credit for the 352 days of incarceration, for a total of 704 days credit. *See* IND.CODE 35-50-6-3(a); IND.CODE 35-50-6-4(a). Sutton was thus left with six years and twenty-six days on his maximum eight-year sentence. The court suspended the prison portion of the sentence, the remaining six years and twenty-six days. The court could not suspend more than this because, by definition, a portion of a sentence that has already been executed cannot be suspended.

After suspending the prison portion of the sentence, the court gave Sutton eight years of probation. This eight-year probation term combined with the "credited" 704 days gives Sutton a sentence which is almost two years in excess of the statutory maximum sentence. The majority states the trial court "suspended the sentence and placed the Defendant on probation for eight years (as permitted by I.C. 35-50-2-2)." Maj. Op. at 1313. IND.CODE 35-50-2-2, however, states: "Whenever the court suspends a sentence for a felony, it shall place the person on probation under IC

35-38-2 for a fixed period to end *not later than the date the suspended sentence expires."* IND.CODE 35-50-2-2(c), emphasis added. Sutton's suspended sentence could only have been six years and twenty-six days, since the remainder of this maximum sentence had already been executed. Sutton could then be placed on probation for a fixed period to end not later than the date the six year and twenty-six day suspended sentence expired. Yet the trial court placed Sutton on probation for *eight* years, which is a period ending later than the date the suspended sentence expired. Sutton did not receive credit for the time he had already spent in jail, and in fact received a sentence in excess of the statutory maximum sentence.

The majority states: "Even if we include the 352 days he spent in jail before trial, the total imprisonment involved is still less than four and one-half years." Maj. Op. at 1313. Assuming Sutton remains in Class I [1], with good-time credit Sutton will have in essence served a sentence of almost nine years, which is in excess of the statutory maximum sentence. A sentence in excess of the penalty mandated by our General Assembly through its applicable statute is an illegal sentence. *Golden v. State* (1990), Ind.App., 553 N.E.2d 1219, 1222. "The broad discretion afforded trial courts in sentencing does not extend beyond statutorily prescribed limits." *Id.* at 1222.

The effect of the majority's decision is to allow Sutton to bear a punishment of almost ten years, when the statutory maximum sentence for this offense is eight years. Appellate courts are to bring an illegal sentence into compliance. *Golden, supra.* I would affirm the conviction, but remand for resentencing to properly credit Sutton for the time he spent incarcerated pending the disposition of the charge. Sutton should be placed on probation for no longer than six years and twenty-six days.

---

1. A person imprisoned for a crime is initially assigned to Class I time and is only reassigned to Class II or Class III if he violates a rule of the department of correction or the penal facility in which he is imprisoned. *See* IND.CODE 35-50-6-4.