**David CASTRO, Antonio Camarillo, Appellants,**

**v.**

**STATE of Indiana, Appellee.**

No. 45S00–8812–CR–949.

Supreme Court of Indiana.

Oct. 28, 1991.

Marce Gonzalez, Jr., Appellate Div., Lake Superior Court, Crown Point, for David Castro.

Albert Marshall, Appellate Div., Lake Superior Court, Crown Point, for Antonio Camarillo.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

In May of 1988, appellants were tried in a joint trial for the murder of Esteban Lleras. The jury found Castro and Camarillo guilty of voluntary manslaughter. A third codefendant, Carlos Villareal, was found not guilty. On June 16, 1988, the trial court sentenced Castro to a term of twenty (20) years. On June 20, 1988, the trial court sentenced Camarillo to a term of sixteen (16) years. Their appeals have been consolidated.

Castro contends the trial court committed an abuse of discretion in denying his motion for a separate trial. Camarillo raises three issues in his appeal. First, he contends the trial court erred by denying his motion for a separate trial. Second, he contends the trial court erred when it denied his tendered instructions on lesser-included offenses of involuntary manslaughter and battery. Third, he contends the jury verdict was not supported by sufficient evidence.

The facts are: On the evening of July 31, 1987, Danny Gonzalez was riding his bicycle in Hammond, Indiana on his way to the R.C.A. social club. Along the way, Camarillo threw something at Gonzalez. Camarillo was driving a car with Mitchell Leon, Robert Leon, Adrian Vasquez, Jorgen Linblad, and Robert Mitchell as passengers.

Camarillo and the others drove past the R.C.A. club where they saw Gonzalez. Camarillo parked his car, proceeded to argue with Gonzalez, and retreated to his car when he was confronted by a man who had come from the club.

Camarillo drove to a parking lot where Vasquez and Mitchell gave hand signs to their friends, Castro and Carlos Villereal, who were in a different car, indicating that they should follow. The two vehicles passed by the R.C.A. club where Enrique Ayala, one of a group of people standing outside the club, threw a beer can against Camarillo's car. The vehicles turned around and passed the club again. This time Gonzalez, who was also in the crowd, threw a knife which broke the back window of Camarillo's car.

Camarillo parked his car and walked, followed by the others, over to Castro's car. There they discussed engaging in a fight with the group at the R.C.A. club and "getting back at them." Villereal opened the trunk of Castro's car and gave one golf club to Camarillo, another club to Castro, a bumper jack to Vasquez, and a hose to

Robert Leon. They then proceeded to the R.C.A. club.

The group which had been assembled outside the R.C.A. club went back inside upon seeing Castro, Camarillo, and the others approaching. Camarillo picked up a bicycle and threw it into the doorway of the R.C.A. club. Thereafter, Camarillo and all but Linblad walked over to a car which was occupied by Lleras and his girlfriend, Ruth Malpica. Apparently, Lleras was preparing to move his car to avoid any damage to it. Castro used his golf club and broke the windshield and driver's side window of Lleras' car. Lleras at that time tried to explain that he had not taken part in damaging Camarillo's car. Camarillo replied that he did not care.

Robert Leon used the hose to attempt to pull Lleras through the window of his car, choking him in the process. They ultimately opened the door of Lleras' car and pulled him to the ground where they proceeded to beat him with the clubs and hose for approximately ten minutes. Both Camarillo and Castro struck Lleras in the head with the golf clubs. At one point, Camarillo gave his club to Villereal who used it to strike Lleras.

Malpica ran inside the R.C.A. club and told the people there that Lleras was being beaten to death. Castro, Camarillo, and the others left Lleras lying in the street, ran to their cars, and drove away. Lleras was transported to the hospital where Dr. Allen Kaufman examined his injuries. Those injuries included a depressed skull fracture, a torn dura, bleeding inside and outside the brain, a torn ear, eye damage, and swelling of the face and scalp. Lleras never regained consciousness before his death several weeks later. Dr. Daniel Thomas, Lake County Coroner, concluded that Lleras' death was caused by blunt-force head injuries.

The State of Indiana initially charged Castro, Camarillo, Mitchell Leon, and Linblad with Battery, a Class C offense. However, on August 28, 1987, the State jointly charged Castro, Camarillo, Mitchell Leon, and Linblad with an amended count of murder. The State's motion to join Robert Leon, Vasquez, and Villereal was granted by the trial court on November 18, 1987. Castro did not make any statements prior to trial. However, certain of the other defendants, including Vasquez and Leon, did make statements.

Castro moved for a separate trial on March 14, 1988. That motion was denied by the trial court on April 28, 1988. Camarillo moved for a separate trial on May 9, 1988. The trial court denied that motion on the same day. On May 9, 1988, when the joint trial began, the State proceeded against Camarillo, Castro, Villereal, Vasquez, and Mitchell Leon. During the course of the trial, Leon and Vasquez entered into plea agreements with the State whereby they would testify in exchange for having the charges against them dropped. Thereafter, the court severed them from the trial, and they testified as State's witnesses.

Appellants contend the trial court's denial of their respective motions for separate trial was error. Indiana Code § 35-34-1-11(b) sets forth that upon a motion for separate trial the trial court must require the prosecution to make certain elections when one of the other defendants has made an inadmissible out-of-court statement referring to the moving defendant. The statute further provides that in other cases the court shall order a separate trial when it is necessary to promote a fair determination of the guilt or innocence of a defendant.

The trial court may in its discretion either grant or deny a motion for separate trial. Upon review, the trial court's decision is measured by what actually occurred at trial rather than what is alleged in the motion. *Rondon v. State* (1989), Ind., 534 N.E.2d 719, *cert. denied*, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383. When appellant seeks a reversal claiming an abuse of discretion in the denial of his motion for separate trial, he must show actual prejudice. *Hicks v. State* (1989), Ind., 536 N.E.2d 496. There is no abuse of discretion in denying a motion for separate trial merely because damaging evidence will be introduced at a joint trial. *Id.* Also, there is a strong judicial policy in favor of joint

trials where codefendants are charged with the same crime. *United States v. Doby* (N.D.Ind.1987) 665 F.Supp. 705.

■ Castro contends *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, supports a reversal of the trial court's decision. Castro claims that Malpica, the State's only eyewitness prior to the State's plea agreement with Vasquez and Leon, made inconsistent statements in her deposition and testimony at trial. Castro argues that he was prejudiced when his motion to separate was denied because the testimony of Vasquez and Leon gave more weight to Malpica's testimony which incriminated him. Vasquez and Leon had made previous statements regarding the events of July 31, 1987.

The United States Supreme Court held in *Bruton* that where two or more defendants are jointly tried, the pretrial confession of one which implicates the other(s) is not admissible against the other(s) when the confessor is not available for cross-examination at trial. The Court's rationale was that an accused's Sixth Amendment right to confront and cross-examine the declarant of the out-of-court statement incriminating him would be lost without this rule. *Id.*

Castro cites this Court's application of the *Bruton* rule in *Baniszewski v. State* (1970), 256 Ind. 1, 261 N.E.2d 359, to bolster his argument for reversal. In *Baniszewski*, we reversed the defendant's conviction because incriminating pretrial statements made by codefendants were admitted into evidence at a joint trial, and the codefendants making those statements were unavailable for cross-examination by the defendant.

There is no showing of prejudice to a defendant in a joint trial where as here, a codefendant/declarant of an extrajudicial statement implicating the defendant takes the stand and is available for cross-examination by the defendant. *Rondon, supra.* The *Bruton* rule was not violated here because both Vasquez and Leon testified at trial and were available for cross-examination.

■ There is no constitutional right to be protected from damaging evidence. *Smith v. State* (1985), Ind., 474 N.E.2d 973. The mere fact that one defendant implicates another does not entitle the latter to a separate trial. *Id.*

■ Camarillo contends the trial court committed reversible error when it denied his motion for separate trial because the number of peremptory challenges to which he was entitled was reduced. Camarillo shared his ten peremptory challenges with the other defendants. He argues that he was unable to be tried by an impartial jury because of the court's abuse of discretion in denying his motion.

■ When a defendant is prosecuted for murder and the death penalty is not sought, he is entitled to ten peremptory challenges. Ind.Code § 35-37-1-3(b). The statute further provides that when defendants are tried together, they must join in their challenges. Ind.Code § 35-37-1-3(d). There is no constitutional or fundamental right to exercise peremptory challenges. *Spangler v. State* (1986), Ind., 498 N.E.2d 1206. The right to peremptory challenges is a matter of statutory grant which may not be expanded or restricted by judicial interpretation. *Id.* Upon review, we will look only to the statute to determine appellant's right. *Id.*

Appellant had no right to more than the statutory number of challenges. The judge had broad discretion in determining whether to grant or deny the motion for separate trial. Appellant does not show any actual prejudice which occurred as a result of the trial court's decision. Absent that showing, we see no abuse of discretion in the denial of appellant's motion for separate trial. *See Hicks v. State* (1989), Ind., 536 N.E.2d 496.

■ Camarillo contends the trial court abused its discretion by refusing to instruct the jury on the lesser offenses of battery and involuntary manslaughter. The choice of jury instructions is left to the trial court's discretion. *Id.* The trial court's decision will be reviewed only for abuse of discretion. *Id.* When the trial court de-

cides to give or refuse a tendered instruction, we will make this inquiry upon review: 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290.

The evidence in the case at bar does not justify an instruction on battery. There is no evidence presented here from which the jury could determine that the defendants only intended to batter the decedent. Their use of deadly weapons, the manner in which the decedent was struck, and the length of time the beating continued justify the trial court's finding that a homicide was intended and that an instruction on battery was not proper. *See Malott v. State* (1985), Ind., 485 N.E.2d 879.

As to the requested instruction on involuntary manslaughter, under certain circumstances, this Court has held that an instruction for involuntary manslaughter was proper. *See Lynch v. State* (1991), Ind., 571 N.E.2d 537. However, in *Lynch,* there was evidence submitted by the defendant that he did not intend to kill his father, that the killing was an accident and therefore he was entitled to an instruction on involuntary manslaughter. However, in the case at bar, no such evidence was presented. The evidence in this case demonstrates a prolonged, severe beating with golf clubs, which under the circumstances are classified as dangerous weapons. The crime of involuntary manslaughter contemplates an incidental killing. Under the circumstances, in the case at bar, death was a likely result of the beating administered. Thus the trial judge did not err in refusing an instruction on involuntary manslaughter. *See Whipple v. State* (1988), Ind., 523 N.E.2d 1363.

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter. Ind.Code § 35–42–1–3. Camarillo argues that the evidence against him is insufficient to support the verdict because State's witnesses testified that others as well as appellant struck Lleras, there was a discrepancy regarding the number of blows struck, and there was some doubt that appellant was armed. He further contends the State failed to prove appellant's specific intent to kill Lleras.

The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury. *Fisher v. State* (1989), Ind., 541 N.E.2d 520. Whether the jury considered the golf club to be a deadly weapon was a question of fact for them to determine. *See Glover v. State* (1982), Ind., 441 N.E.2d 1360.

Appellant admitted he struck Lleras, but argues that the blows delivered by him were not the "death blows." A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. Ind.Code § 35–41–2–4. Further, an accomplice is responsible for all acts committed by a confederate which are done in the probable and natural consequences of a common plan. *Moredock v. State* (1987), Ind., 514 N.E.2d 1247. The death of Lleras was part of the plan in which appellant participated. Testimony indicated that appellant said "Let's go fight." Witnesses testified Camarillo had a golf club in his hand and that he used it to strike Lleras. The beating lasted for approximately ten minutes. Taking that evidence into consideration, the jury could have inferred an intent to kill Lleras on the part of Camarillo.

The fact that one witness testified that the blows were delivered in a different manner was a question of weight for the jury to decide. There was sufficient evidence to support the verdict.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

KRAHULIK, J., concurs in result.