Donell CURRIN, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–9308–CR–293.

Court of Appeals of Indiana, Fifth District.

Aug. 24, 1994.

Mark A. Bates, Appellate Public Defender, Crown Point, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

RUCKER, Judge.

Donnell Currin Jr. appeals his conviction for Robbery, as a Class A Felony[1]. He raises two issues for our review which we rephrase as: 1) whether the trial court erred in refusing to allow Currin to peremptorily challenge the sole black prospective juror and, 2) whether the trial court erred by refusing to allow Currin to impeach a State's witness with the witness's prior conviction for aiding and abetting a battery.

We affirm.

The essential facts are these. In the evening hours of August 28, 1992, Currin entered the home of Francine Nelson, beat her severely, and left with her VCR and television set. He was accompanied by a person identified as Roosevelt White. Both Currin and White were arrested later that night and Currin was ultimately charged with robbery. The case proceeded to trial by jury on April 13, 1993. During voir dire Currin sought to peremptorily challenge a prospective juror. Both Currin and the juror whom he attempted to challenge are black. The trial judge denied the challenge noting that the juror was the only black person on the panel. The trial judge continued: "Experienced defense counsel strike mature blacks, if they have a black defendant for a client, more readily than they would strike anyone else." *Record* at 434. Counsel for Currin responded that his peremptory challenge was based on comments the juror made concerning his prior jury service. Counsel elaborated:

His comments about his prior jury service, his feelings about that, his characterization

of the opposing jurors and a mistrial as being looking for excuses. Then when asked again about that he said he thought those other jurors—well, the position he attributed to the opposite or opposing jurors was, they felt the defendant was guilty but there wasn't enough evidence, which I felt to be a, certainly not looking for excuses.

*Record* at 435.[2] The trial court rejected Counsel's reasons indicating they were "[a] euphemism for not wanting him because he's a mature black." *Record* at 435. The juror was seated and the trial court denied Currin's motion for mistrial.

During its case-in-chief the State called Roosevelt White as a witness. On cross-examination Currin sought to impeach White by questioning him concerning a prior conviction for conversion as well as a prior conviction for aiding and abetting a battery. Over objection by the State the trial court allowed questioning concerning the conversion conviction but not the aiding and abetting conviction. Ultimately, Currin was convicted as charged and this appeal arose in due course.

### I.

Currin mounts a multi-prong attack challenging the trial court's denial of his peremptory challenge. First, Currin suggests that because a black defendant, as opposed to the State, challenged the venireman the *Batson* test is not applicable.[3] Currin is mistaken. As originally decided, *Batson* applied only to criminal cases and prohibited

---

1. Ind.Code § 35–42–5–5–1.

2. Without objection by either side the court reporter was excused during the voir dire examination. As a result we do not have for examination and review a verbatim transcript of the questions posed to the challenged juror or the responses given. In like fashion we do not have a verbatim transcript of the exchange that took place between the trial judge, the prosecutor and defense counsel at the time the peremptory challenge was originally made. Rather, after the jury returned with its verdict of guilty, the trial court went on the record to discuss the circumstances surrounding the voir dire and peremptory challenge occurring two days earlier. The quoted

exchanges and reference to the record reflect events occurring after the trial and verdict.

3. The premier case of *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, established a three-prong test under which a defendant may protest a potentially discriminatory peremptory challenge: (1) he is a member of a cognizable racial group; (2) the prosecutor has peremptorily challenged members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor used the practice to exclude veniremen from the petit jury because of their race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. By showing these three factors the defendant raises

the State from using its peremptory challenges to disqualify jurors of the same race as the defendant. The focus was the Fourteenth Amendment's guarantee of a defendant's right to a fair trial. However *Batson* has been extended over the years. Not only does *Batson* now apply to black criminal defendants and jurors, it also applies to white criminal defendants where black jurors have been peremptorily challenged by the State. *Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411; it applies to plaintiffs as well as defendants in civil litigation, *Edmonson v. Leesville Concrete Co., Inc.,* (1991), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660; and it also affords prosecutors the right to challenge the use of discriminatory peremptory challenges used by defendants. *Georgia v. McCollum* (1992), —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33. Thus, Currin's suggestion that the State could not avail itself of a *Batson* challenge is without merit.

[4, 5] In a related vein Currin contends that because he is black, his peremptory challenge of a potential black juror falls outside the scope of *Batson.* Because he supports this contention with neither cogent argument nor citation to authority the issue is waived. Ind.Appellate Rule 8.3(A); *State v. Denny* (1980), Ind.App., 409 N.E.2d 652. However, waiver notwithstanding this argument also lacks merit. In *Batson* the court observed that the discriminatory use of peremptory challenges harms the prospective jurors and undermines the public confidence in the fairness of our system of justice. *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718. Consequently, a juror may not be denied the right to participate in jury service based merely on the juror's race or ethnic identity. It is of no consequence that the challenged prospective juror is of the same race or ethnic identity as the challenger. The question is whether the peremptory challenge is being used to remove a prospective juror on prohibited grounds. *See e.g., Powers,* 499

U.S. at 407, 111 S.Ct. at 1369 ("[a] member of the community may not be excluded from jury service on account of his or her race"); *Carter v. Jury Comm'n of Greene County* (1970), 396 U.S. 320, 329, 90 S.Ct. 518, 523, 24 L.Ed.2d 549, 557 (people excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion).

Currin next contends the trial court erred in seating the challenged juror over his objection and denying his motion for mistrial. According to Currin his peremptory challenge of a single black person did not amount to prima facie evidence of purposeful discrimination. *See e.g., Phillips v. State* (1986), Ind., 496 N.E.2d 87 (use of peremptory challenge to remove black juror, standing alone, does not raise an inference of racial discrimination).

In *Andrews v. State* (1992), Ind.App., 588 N.E.2d 1298, *reh'g denied,* the defendant argued the trial court erred in denying his motion for mistrial based on the State's failure to give a neutral explanation for the peremptory challenge of two prospective black jurors. We observed that the defendant successfully established the first two prongs of the prima facie test announced in *Batson* in that he was black and the prosecutor exercised peremptory challenges to remove blacks from the jury. *Id.* We also observed that the State's explanation for excluding the prospective jurors did not sufficiently rebut a prima facia case of racial discrimination. *Id.* However, citing *Sutton v. State* (1990), Ind.App., 562 N.E.2d 1310, *trans. denied, cert. denied* (1991), —— U.S. ——, 112 S.Ct. 598, 116 L.Ed.2d 621 we held that absent a showing of facts and other relevant circumstances raising an inference of purposeful racial discrimination, the burden of proving a neutral explanation for the exclusion did not shift to the prosecutor. *Andrews,* 588 N.E.2d at 1301. We concluded that the defendant failed to establish a prima facie case of racial discrimination. By infer-

an inference of purposeful discrimination requiring the State to come forward with a neutral explanation for challenging the veniremen; the

explanation need not rise to the level required to justify a challenge for cause.

ence we suggested that regardless of the State's rationale for excluding a black juror, the proper inquiry is whether a prima facie case of purposeful discrimination had been established in the first instance.

We examine *Sutton* and *Andrews* in the light of *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395. In that case defendant Hernandez raised a *Batson* challenge. The prosecutor did not wait for a ruling on whether the defendant had established a prima facie case of racial discrimination. Rather, the prosecutor volunteered his reasons for striking the jurors in question. On appeal the supreme court did not address the question of whether the defendant had or had not established a prima facie case of racial discrimination. Instead, the court determined:

> Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.

500 U.S. at 359, 111 S.Ct. at 1866. Thus, where a *Batson* challenge is made and the challenged party offers its explanation for the proposed exclusion of a prospective juror, we need not address the question of whether the challenger has made a prima facie showing of purposeful discrimination. The issue is academic. Here, the record reveals that an objection was made to the defendant's peremptory challenge of a black prospective juror. The record does not reveal whether the trial court made a preliminary ruling on whether the prosecutor established a prima facie case of intentional discrimination. In any event the defendant offered his race neutral explanation for the exclusion. The issue of whether the prosecutor made a prima facie showing is therefore moot and unlike our position in *Andrews* here we decline to address the issue.

Currin next complains that the reasons he gave for challenging the black juror were race neutral. Specifically, that the juror had previously served on a criminal jury panel; that the juror expressed dissatisfaction with a decision of other members of the prior panel to acquit the defendant rather than vote for guilty.

It is true that a neutral explanation is one based on something other than the race of the juror. *Minniefield v. State* (1989), Ind., 539 N.E.2d 464, *reh'g denied.* The focus of inquiry is the facial validity of the challenged party's explanation. "Unless a discriminatory intent is inherent in the [challenged party's] explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866. It is equally true, however, that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact which is accorded great deference on appeal. *Taylor v. State* (1993), Ind.App., 615 N.E.2d 907. *Atkins v. State* (1990) Ind.App., 561 N.E.2d 797, 800, *trans. denied.* As the court observed in *Hernandez:*

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of [counsel's] state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." (citation omitted).

500 U.S. at 365, 111 S.Ct. at 1869. Here, Currin's explanation for challenging the prospective black juror is race neutral on its face. The trial court observed, however, that the explanation was merely a euphemism for not wanting the juror because he was a mature black person. There may very well have been facts and other circumstances before the trial court not apparent on the face of the record before us including the "demeanor of the attorney who exercise[d] the challenge" on which the trial judge based its decision. Because of the absence of a record, *see* n. 2, and our deferential standard of

review on this issue, we cannot conclude that the trial court erred in refusing to allow Currin to exclude the prospective juror by way of a peremptory challenge.[4]

## II.

Finally, Currin contends the trial court erred in not allowing him to impeach a State's witness with the witness's prior conviction for aiding and abetting a battery. According to Currin the crime of aiding and abetting any offense involves dishonesty and a calculated effort to assist in criminal activity and thus the offense should be available for impeachment of a witness. Currin's argument is not persuasive.

For impeachment purposes, only convictions for crimes involving dishonesty or false statement, or infamous crimes (treason, murder, rape, arson, burglary, robbery, or kidnapping), may be used to impeach a witness. *Storey v. State* (1990), Ind., 552 N.E.2d 477, 481, citing *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. It is within the trial court's discretion whether to permit cross-examination to test the credibility of witnesses and this court will find reversible error only where there is an abuse of discretion. *Hobbs v. State* (1990), Ind., 548 N.E.2d 164.

To some extent all crimes have an "element of dishonesty in the broad sense of moral depravity." *Mayes v. State* (1974), 162 Ind.App. 186, 210, 318 N.E.2d 811, 825 (Buchanan, J., dissenting). However, the entire thrust of *Ashton* and its progeny is that either a particular criminal conviction reflects on the witness's credibility for truth and veracity or it does not. Thus, a conviction which has no bearing on the witness's propensity to tell the truth is not admissible in evidence for impeachment purposes. *See Dudley v. State* (1985), Ind., 480 N.E.2d 881; *U.S. v. Motley* (7th Cir.1991), 940 F.2d 1079 (applying Fed.R.Evid. 609(a)(2)). *See also,* Ind.Evidence Rule 609(a)(2). In this case White's conviction for aiding and abetting a battery involved a crime of violence which does not necessarily reflect on his credibility for truth and veracity. The trial court properly excluded the use of the conviction for purposes of impeachment. Finding no error, we affirm the judgment of the trial court.

Judgment affirmed.

HOFFMAN, J., concurs.

SHARPNACK, C.J., dissents with separate opinion.

SHARPNACK, Chief Judge, dissenting opinion.

I disagree with the majority's analysis of the trial court's refusal to permit Currin to

---

4. We hasten to add that trial courts should exercise extreme caution in limiting counsel's use of peremptory challenges. Although *Batson* requires counsel to articulate a neutral reason for its strikes once a prima facie showing of discrimination has been established, often it is impossible to do so. A peremptory challenge is sometimes exercised on hunches and impressions perhaps having to do with a prospective juror's habits, associations, or bare looks. *Merritt v. State* (1986), Ind., 488 N.E.2d 340, 341. Simply because counsel may not be able to articulate reasons for a peremptory strike in the face of a *Batson* challenge does not necessarily mean the strike was race (or gender) based. As Justice O'Connor observed in her concurring opinion in *J.E.B. v. Alabama ex rel. T.B.* (1994), — U.S. —, —, 114 S.Ct. 1419, 1431, 128 L.Ed.2d 89:

The peremptory challenge is ... "part of our common law heritage." [citation omitted].... "Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of eliminat[ing] extremes of partiality on both sides, thereby assuring the selection of a qualified and unbiased jury." [citation omitted] ... Moreover, "[t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." [citation omitted]. Indeed, often a reason for it cannot be stated, for a trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's ... "'bare looks and gestures.'" [citation omitted]. That a trial lawyer's instinctive assessment of a juror's predisposition cannot meet the high standards of a challenge for cause does not mean that the lawyer's instinct is erroneous [citation omitted]. Our belief that experienced lawyers will often correctly intuit which jurors are likely to be the least sympathetic, and our understanding that the lawyer will often be unable to explain the intuition, are the very reason we cherish the peremptory challenge.

exercise his peremptory challenge. Two aspects of this issue are troubling. First, it appears that it was the judge, not the State, who objected to the use of a peremptory challenge by the defense. Second, an explanation for the peremptory challenge was offered without a prima facie showing of discrimination having been made.

Under Indiana law, "although parties have a right to peremptory challenges in selecting a jury, they are subject to reasonable regulation by the trial court." *Nagy v. State* (1987), Ind., 505 N.E.2d 434, 437. The trial court may properly refuse additional peremptory challenges after parties are given an opportunity to examine prospective jurors, witness the examination by the opposing party, and make their challenge pursuant to local court rule. *Id.* However, "[n]o party is required to explain its reasons for the exercise of such a [peremptory] challenge." *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 88.

The judge in the present case was evidently under the impression that because "everybody is covered by *Batson*," "everybody gets the right not to be struck for an improper reason." On that basis, the judge apparently asks for reasons for all peremptory strikes.

The majority glosses over this crucial issue by casting the facts in the passive voice.[1] A review of the record[2] shows that the State made no objection to Currin's peremptory challenge; on the contrary, the judge undertook to require of Currin reasons for three peremptory challenges.

"BY MR. VANES (Defense Counsel): Here is my from memory of the sequence [sic]. I struck or attempted to strike on the first pass three jurors.

BY THE COURT: Oh, Kubik, Marco and Moody, right.

BY MR. VANES: Correct. And the way I tendered them to the Court and I still

have my sheet was Mr. Moody was the last one. And the court, I do recall and agree with the court that at one point it said something like, you probably know this better than I do, but he's the only male black on the jury—

BY THE COURT: No. He's the only black on the panel.

BY MR. VANES: Right. Only black on the panel.

BY THE COURT: And then I looked out there for the rest of the venire and we weren't going to get another black for another ten, fifteen people.

BY MR. VANES: The court did say that, but it did not say that until it had already, particularly with Kubik or the other two, it started out in terms of the sequence of things, the court started out by asking me for reasons for the peremptories before we even got to Mr. Moody, let alone the—when we got to Mr. Moody, at some point the court did say that, that is correct.

BY THE COURT: And the reason why I'm now asking for reasons for everybody, it's up in the air as to who's covered by *Batson* and who isn't. It looks to me like everybody is covered by *Batson*, everybody. So, everybody gets the right not to be struck for an improper reason.

BY MR. VANES: As long as we're here, does the Court agree with me that it did inquire of my reasons for striking?

BY THE COURT: All three.

BY MR. VANES: All three.

BY THE COURT: I agree.

BY MR. VANES: Okay.

BY MS. SEVERTSON (Prosecutor): And the one potential strike the state tried to make.

---

1. "Here, the record reveals that an objection was made to the defendant's peremptory challenge of a black prospective juror." Op. at 1323.

2. The voir dire process was not recorded. Our review of this issue has relied upon a colloquy

that took place after the jury had returned its verdict.

BY MR. VANES: Right.

BY THE COURT: Yes, you too. Fears proved unfounded again, Miss Severtson."

Record, p. 435–37.

Under Indiana law, a judge may not *sua sponte* require a reason for a peremptory challenge. "A peremptory challenge is one exercised without reason stated, without inquiry, and without being subject to the court's control." *Phillips*, 496 N.E.2d at 88. While there is no constitutional or fundamental right to exercise peremptory challenges, the right to peremptory challenges is a matter of statutory grant which may not be expanded or restricted by judicial interpretation. *Castro v. State* (1991), Ind., 580 N.E.2d 232, 235. Upon review, appellate courts may look only to the statute to determine the appellant's right. *Id.*

In *Schroer v. Funk* (1968), Ind., 237 N.E.2d 247, Justice Jackson stated unequivocally:

"The right of the litigant to the use of a peremptory challenge is absolute, there is no area of discretion on the part of the trial court wherein and whereby such right can be denied or abrogated.

&ast; &ast; &ast; &ast; &ast; &ast;

The language of the Appellate court relative to the statement that the denial of a peremptory challenge of a juror 'primarily involves the exercise of the discretionary powers of the court' is hereby totally disapproved and is deleted.' "

*Id.* at 248.

The trial court erred in objecting *sua sponte* to Currin's peremptory challenge of juror Moody, and it also erred in requiring Currin to provide a neutral explanation for his peremptory challenge without a prima facie case of discrimination having been made by the State.

Normally, when a party raises *Batson* in objection to a peremptory challenge, the court rules on whether the party has established a prima facie case of racial discrimination. If so, the burden shifts to the other party to come forward with a neutral expla-

nation for the peremptory challenge. In the present case, the judge apparently objected to the defense's peremptory challenge of juror Moody and demanded a race-neutral explanation without establishing a prima facie case of discrimination or requiring the State to establish one. The defense had little choice but to offer the court an explanation, which the court did not accept.

The majority cites *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395, where the prosecutor volunteered his reasons for striking the jurors without waiting for a ruling on whether the defense had established a prima facie case. The U.S. Supreme Court held that the preliminary question of whether the prima facie case had been made had become moot. In our case, however, neither the court nor the prosecutor even attempted to make a prima facie case of discrimination before an explanation was demanded. The fact that juror Moody was the only black juror on the venire was apparently sufficient for the trial court to demand a race-neutral explanation.

The trial court abused its discretion in objecting *sua sponte* to the defendant's peremptory challenge and compounded this error by demanding a race-neutral explanation without a showing of a prima facie case of discrimination.

I would reverse and remand for a new trial.