Nathan MINNIEFIELD & Calvin
Hill, Appellants,

v.

STATE of Indiana, Appellee.

No. 45S00–8706–CR–580.

Supreme Court of Indiana.

June 15, 1989.

Rehearing Denied Aug. 22, 1989.

Scott L. King, Appellate Public Defender, Lake Superior Court, Crown Point, for Nathan Minniefield.

Daniel L. Bella, Appellate Public Defender, Lake Superior Court, Crown Point, for Calvin Hill.

Linley E. Pearson, Atty. Gen. and Jay Rodia, Deputy Atty. Gen., Indianapolis, for the State.

GIVAN, Justice.

A jury trial resulted in the conviction of both appellants of Robbery, a Class A felony. Appellant Minniefield received an aggravated sentence of forty (40) years, while appellant Hill, who was found to be an habitual offender, received an enhanced sentence of sixty-five (65) years.

The facts are: Around 2:00 a.m. on September 25, 1986, as Michael Guiden was exiting his car, he was accosted by appellants and ordered at gunpoint to lie down on the front seat. Guiden was searched and relieved of the contents of his pockets, including his wallet, money, some betting slips, and other papers.

Guiden then was ordered to get into the back seat. His assailants started the car and drove away with Guiden in the back seat. A short time later, Guiden escaped by jumping from the moving car. In the process, he injured his right side and right knee, for which he later was treated at St. Margaret's Hospital and forced to walk with crutches for a month.

After hearing a radio dispatch of the crime, including a description of Guiden's car, police officers observed the car and gave chase. The chase ended abruptly when Guiden's car failed to make a turn and crashed. Both occupants fled on foot, but later were captured.

Appellants contend the trial court erred in denying their motion for mistrial based upon the prosecutor's racially discriminatory exercise of his peremptory challenges. During jury selection, the prosecution exercised six peremptory challenges to strike one white and five black members of the panel, leaving one black and eleven white jurors. Prior to the jury being sworn, appellant Hill moved for a mistrial on the basis of the purposeful exclusion of black jurors, referring to the recently adopted standard announced in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69. The prosecutor then stated that his reasons for striking would become apparent in the course of the trial, and the trial court reserved judgment on the motion.

During the presentation of the State's case, State's Exhibit No. 9 was admitted into evidence. It consisted of two slips of paper identified as having been taken from the robbery victim's pants pockets and having been recovered, along with two betting slips, during an inventory search of appellant Minniefield's personal effects after his arrest. Because the victim's wallet had been discarded and then recovered in the grass at the scene of the car wreck, the prosecutor offered Exhibit No. 9 in order to connect appellant Minniefield to the crime.

The slips of paper were readily identifiable as being the ones taken from the victim because one was a shopping list and on the other was written the following:

"How many Mexicans does it take to grease a car?
One if you hit him right.
What did Lincoln say when he woke up from a five day drunk?
I freed who?"

The writing was not read aloud but was passed to the jury.

At the close of the evidence, appellants renewed their motion for mistrial. In response, the prosecutor stated he had struck the black jurors "for strategy purposes," because he "was not certain how any of the black jurors ... might be affected by that joke that was taken off of Mr. Guiden."

In ruling on the motion for mistrial, the trial court ruled,

"I am just not able to make a determination at this point that that was a legitimate or illegitimate reason. It will be, if necessary, reviewed. And maybe we need some direction. I know the Indiana

Supreme Court is going to be looking at these types of cases. And maybe they will give us, if the verdicts warrant it, some guidance on exactly what we should do as Trial Judges."

The trial court then denied the motion for mistrial.

For over a century, it has been the law of the land that a State denies a black defendant equal protection of the law when it puts him on trial before a jury from which members of his race have been purposefully excluded. *Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L.Ed. 664. Purposeful racial discrimination in selection of the jury violates equal protection by denying the defendant the protection that a trial by jury is intended to secure, *i.e.,* trial by a body composed of the peers or equals of the person whose rights it is selected to determine. Denying a person participation in jury service on account of his race also unconstitutionally discriminates against the excluded juror. *Id.*

More recently, the United States Supreme Court has set forth a three-prong test by which a race-based equal protection violation in jury selection may be established solely from the evidence concerning the State's exercise of peremptory challenges. *Batson, supra.* As adopted by this Court in *Weekly v. State* (1986), Ind., 496 N.E.2d 29, the test is as follows:

"To [establish a denial of equal protection] the defendant must show: (1) he is a member of a cognizable racial group; (2) the prosecutor has peremptorily challenged members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury because of their race. [Citation omitted.] By showing these three factors the defendant raises an inference of purposeful discrimination which requires the State to come forward with a neutral explanation for challenging the veniremen; the explanation need not rise to the level required to justify a challenge for cause." *Id.* at 31.

*See also Love v. State* (1988), Ind., 519 N.E.2d 563; *Splunge v. State* (1988), Ind., 526 N.E.2d 977.

In the case at bar, the record reveals all three prongs of the test are satisfied: (1) Both appellants are black; (2) the prosecutor used his peremptories to strike five of six black veniremen; and (3) the facts raise an inference, to say the least, that the prosecutor excluded the five because of their race. The burden now shifts to the State to provide a neutral explanation for such use of the peremptory challenges.

'Neutral' explanation does not mean 'justifiable on strategic grounds,' nor does it mean 'practiced with regard to something other than the struck juror's racial identity with the defendant.' It means 'neutral with regard to the struck juror's group identity'—here, race-neutral. "Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at trial. [Citation omitted.] A person's race simply 'is unrelated to his fitness as a juror.'" *Batson, supra* 476 U.S. at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81. The race-based use of peremptory challenges, then, even if allegedly dictated by strategic considerations, is a *per se* violation of the equal protection clause of the Fourteenth Amendment and warrants reversal of the conviction. *Id.*

The trial court erred in the first instance when it failed to grant a mistrial upon the prosecutor's inability to give a neutral explanation, at the end of the *voir dire,* for the grossly racially disparate use of its challenges. It erred in the second instance when it failed to grant a mistrial at the close of the evidence upon hearing the prosecutor's race-based explanation.

Appellant Hill raises another issue which may recur upon retrial. We therefore will address that issue.

Appellant Hill contends the evidence was insufficient to support his conviction of robbery as a Class A felony. He argues the robbery had been completed by the time the victim sustained his injuries by

jumping from the moving car. Thus, he maintains, the victim's injuries did not result from the robbery, which consequently cannot be elevated to a Class A felony.

His contention is clearly without merit. Aggravation by reason of resulting injury does not depend upon when a crime begins or ends, but rather depends upon the causation of the injury. Indiana Code § 35–42–5–1 states that robbery is "a Class A felony if it results in serious bodily injury to any person other than a defendant." Regardless of the intent of the perpetrator, if the injury occurs as a consequence of the conduct of the accused, the offense is regarded as a Class A felony. *Stark v. State* (1986), Ind., 489 N.E.2d 43.

The injuries here resulted from the victim's escape from the robbers; but for the robbery, there clearly would have been no injury. The evidence was sufficient to support the conviction of robbery as a Class A felony.

This case is reversed and remanded to the trial court for a new trial.

PIVARNIK, J., concurs.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, J., dissents with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, dissenting.

The majority opinion accurately identifies the test to be applied when the prosecution's exercise of peremptory challenges of prospective petit jurors is challenged on equal protection grounds. Here, the trial prosecutor's peremptory challenge of black jurors raised an inference of racially discriminatory purpose. The burden was then shifted to the prosecution to come forward with a neutral explanation for challenging black jurors. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We know that such an explanation need not rise to the level of a basis for challenge for cause on the one hand, but must rise above the level of an intuitive judgment that persons are partial to those of the same race. We are also instructed that a neutral explanation will be one which bears a relation to the particular case to be tried. *Id.* In his concurring opinion in *Batson*, Justice White was of the opinion that a neutral explanation is one supported by trial-related reasons of a satisfactory nature and not the belief that black jurors should not be allowed to judge a black defendant. *Id.*, 476 U.S. at 101, 106 S.Ct. at 1725, 90 L.Ed.2d at 90–91. Justice Marshall feared the courts might totally undermine equal protection by finding neutral explanations in such ethereal statements as:

1. The juror had a son about the same age as the defendant.
2. The juror seemed uncommunicative.
3. The juror never cracked a smile and. therefore did not possess the sensitivities necessary to realistically look at the issues and decide the facts in this case.

*Id.*, 476 U.S. at 106, 106 S.Ct. at 1728, 90 L.Ed.2d at 94, (Marshall, J., concurring).

In this case, papers taken from the victim had to be introduced into evidence by the prosecution which showed that the victim enjoyed racist jokes with blacks and hispanics as their targets. The trial prosecutor naturally judged that black jurors, becoming aware of this trait of their star witness, would tend to be hostile toward his plight. The trial prosecutor exercised the State's peremptory challenge because the jurors were black and being black and a juror in this case evidenced not a sympathy for the black defendant, but hostility toward the State's chief witness and indeed the State's case. While the test of *Batson* is multi-pronged, the thrust is singular, namely that we will not tolerate purposeful racial discrimination in the process by which the jury in a criminal case is selected. In my opinion, while the prosecutor exercised the peremptory challenges on the basis of race and the hostility toward the State's case which that race may bespeak, the motivation of the prosecutor was not purposeful racial discrimination. The prosecutor here did not attempt to rob the defendant of any benefit which might flow from black participation on the jury, or to

gain any benefit which might flow to the prosecution from an all-white jury. It was very specific and fact-related and did not have the egregious character of those explanations considered by Justice Marshall beneath which invidious discriminatory intent may easily be hidden. The prosecutor's explanation, while based upon race, was nevertheless a neutral one related to the particular case to be tried and therefore satisfying the commands of equal protection.

A satisfactory test of whether this prosecutor provided a neutral explanation for his use of peremptory challenges against black jurors would be whether, in the opinion of the court, he would have been motivated to make those same peremptory challenges if the defendants had been white. It is manifest that this prosecutor would have exercised his peremptory challenges against black jurors even if the appellants had been white, because any tendency of black jurors to be unsympathetic with the State's case by reason of the racist tendencies of the alleged victim would not have been diminished by reason of the race of the defendants.

SHEPARD, C.J., concurs.