Young Soo KOO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–9301–CR–6.

Court of Appeals of Indiana,
Fifth District.

Sept. 22, 1994.

Rehearing Denied Dec. 2, 1994.

Joseph S. Van Bokkelen, Timothy G. Kline, Goodman Ball & Van Bokkelen Professional Corp., Highland, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

RUCKER, Judge.

Young Soo Koo was convicted of rape as a Class B felony[1] for which he received a twenty-year sentence. He now appeals raising eight issues for our review which we rephrase as follows:

1. Whether the judge pro tempore improperly presided over the trial of this case;

2. Whether the trial court erred in denying Koo's peremptory challenges of two female venirepersons on the basis of gender;

3. Whether the trial court erred by admitting evidence of Koo's prior, uncharged acts of sexual misconduct;

4. Whether the trial court erred by refusing to allow Koo to introduce testimony of the victim's discussions with her attorney regarding monetary settlement negotiations related to a civil suit as well as the criminal charge against Koo;

5. Whether the trial court erred by refusing to allow Koo to pursue additional discovery concerning whether the victim made allegations of rape against other persons;

6. Whether the trial court erred in denying Koo's motion to correct error based on newly discovered evidence;

7. Whether the trial court erred in denying Koo's motion for an order authorizing post-trial jury contact;

8. Whether Koo's twenty-year sentence was manifestly unreasonable.

We affirm.

The record reveals that the victim had been a patient of Dr. Young Soo Koo for more than eleven years and for several years had suffered from numerous gynecological disorders. On March 30, 1992, the victim visited Koo's office to determine the result of x-rays which had been taken at a hospital the previous day. The victim arrived at the office and walked into the examination room where she disrobed, placed a sheet around her waist and sat on the examining table. Koo entered the room, grabbed the victim's arm and gave her an injection. When the victim asked about the injection, Koo informed her that it was Valium. Koo then instructed the victim to position herself near the end of the table. He taped a corner of the sheet, which covered the victim's waist, to an overhead light. While her feet were placed in stirrups on the table, the victim felt something other than a speculum enter her vagina. She also felt Koo's body pressing back and forth against her, and Koo's hands on both sides of her legs. The victim then lifted the end of the sheet and saw Koo's penis pulling out of her and observed Koo zipping his pants. Koo was charged with rape and after a trial by jury was convicted as charged. This appeal ensued in due course. Additional facts are discussed below where relevant.

## I.

■ Koo challenges the authority of the judge pro tempore to hear his case. First, Koo contends the judge pro tempore was not properly appointed in that his appointment did not specify the duration of his term. Because Koo supports this contention with neither cogent argument nor citation to authority, the issue is waived. Ind.Appellate Rule 8.3(A); *State v. Denny* (1980), Ind.App., 409 N.E.2d 652. Waiver notwithstanding Koo's argument is unavailing.

■ Indiana Trial Rule 63(E) states in relevant part:

---

1. Ind.Code § 35–42–4–1.

A judge who is unable to attend and preside at his court for any cause may appoint in writing a judge pro tempore to conduct the business of this court during his absence. The written appointment shall be entered in the records of the court.

The rule does not require that the written appointment set forth the duration of the judge pro tempore's authority. Because the judge complied with the mandates of the rule, we find no irregularity in the appointment of the judge pro tempore.

■ Second, Koo complains that at some point during the two-week trial the regular judge returned thereby revoking whatever authority the judge pro tempore initially possessed. As Koo correctly points out a judge pro tempore may not act as a judge of the court in one room while the regular judge exercises jurisdiction in another room. *Survance v. State* (1984), Ind., 465 N.E.2d 1076.

In *Boushehry v. State* (1993), Ind.App., 626 N.E.2d 497 (opinion on rehearing), we determined that in order for us to have a valid final judgment to review, a judgment entered prior to July 1, 1993, must have been entered by either the regular judge, a properly appointed special judge, or a properly appointed judge pro tempore. If the judge pro tempore has not been properly appointed or does not have the authority to act because the regular judge is conducting business, then any judgment entered by that purported judge pro tempore cannot be a final judgment on appeal.

Thus, if the record here showed that the judge pro tempore did not have authority to act because the regular judge had returned and was conducting business, we would be compelled to dismiss this appeal. However, contrary to Koo's assertion the record here does not "unequivocally show[ ] that Judge Maroc returned during the time Magistrate Page continued to hear the cause as a Judge pro tempore." *Brief of Appellant,* pp. 17, 18. Indeed, other than remarks made by the magistrate that the regular judge would be returning and comments made by the magistrate during the course of trial about the necessity of having to look for another courtroom, the record here is silent on whether the regular judge actually returned or if he returned, whether he conducted court business. We find no error on this issue.[2]

## II.

Koo mounts a multi-prong attack challenging the trial court's denial of his peremptory challenges of two female venirepersons. His claim of error arises from the following facts. During jury selection the State alleged that Koo had demonstrated a pattern of gender-based peremptory challenges in striking six of eight prospective female jurors. At the time the State raised its challenge, Koo had moved to strike two female jurors, after having struck four women and then accepting two women on the panel. The trial court found gender-based discrimination and seated the two female jurors over Koo's objections.

■ First, Koo argues that gender-based peremptory challenges are not prohibited under *Batson.*[3] This claim of error must fail

---

**2.** We also note that Magistrate Page conducted the sentencing hearing as judge pro tempore. In *Boushehry,* we found it necessary to dismiss the appeal because the judge pro tempore who presided over the trial also conducted the sentencing hearing. The judge pro tempore appointment, however, covered only the date of the trial and not the date of the sentencing hearing. Thus, we did not have a final judgment because the judgment was not entered by the regular judge or a properly appointed judge pro tempore. Here, Magistrate Page was specifically appointed as judge pro tempore on July 13, 1992, to sit and conduct the business of the court until the regular judge's return. Nothing in the record shows that the regular judge returned prior to the sentencing hearing conducted on August 26, 1992. Thus, because the record does not show that

Magistrate Page was not acting with authority as the properly appointed judge pro tempore, we have a final judgment that we may review on appeal.

**3.** The premier case of *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, established a three-pronged test under which a defendant may protest a potentially discriminatory peremptory challenge: (1) he is a member of a cognizable racial group; (2) the prosecutor has peremptorily challenged members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor used the practice to exclude veniremen from the petit jury because of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. By showing these three factors the defendant raises

because since this case was briefed, the Supreme Court extended *Batson* to gender-based peremptory challenges. In *J.E.B. v. Alabama ex rel. T.B.* (1994), —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89, the Court held that intentional discrimination on the basis of gender during jury selection violates the equal protection clause contained in the Fourteenth Amendment to the United States Constitution. The issue is now settled.

■ Koo also counters that even if gender-based peremptory challenges are prohibited, the court erred in finding that a prima facie case of gender discrimination had been made because he did not challenge all female veni-repersons. *See e.g., Sutton v. State* (1990), Ind.App., 562 N.E.2d 1310, *cert. denied,* 502 U.S. 987, 112 S.Ct. 598, 116 L.Ed.2d 621 (use of peremptory challenges to exclude African Americans from a jury does not, by itself, raise an inference of purposeful discrimination). We decline to address this issue. Once the challenged party has offered a gender or race neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot. *Currin v. State* (Ind.App., 1994), 638 N.E.2d 1319, 1323 citing *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395.

■ Koo next complains that the reasons he gave for challenging the female jurors were gender neutral. Specifically, counsel for Koo explained that he struck juror Taylor because she was young and attractive, he sensed electricity between her and the male prosecutor and because she visited a female doctor after leaving a male physician. Counsel indicated that he felt juror Taylor had a rapport with the prosecutor that he could not establish because he was older than the juror. Counsel further explained that he struck juror Taylor because she had taken

an inference of purposeful discrimination requiring the State to come forward with a neutral explanation for challenging the veniremen; the explanation need not rise to the level required to justify a challenge for cause.

4. Again, we express our concern of trial courts limiting counsel's use of peremptory challenges. *See, Currin v. State* (1994), Ind.App., 638 N.E.2d

Valium and Codeine without ill effects. According to Koo the question of drugs, especially Codeine and Valium, would surface as significant issues during the course of trial. Also, counsel maintained that based upon his twenty-five years in practice, he did not think it prudent to have young, attractive females on the jury. Concerning juror Usborne, counsel for Koo maintained that he struck her because she had never had children. Counsel indicated that he did not like "spinsters" and based on his experience "if you have a doubt on a juror, strike it rather than regret it later on." *Record* at 774.

As in race, a neutral explanation is one based on something other than the sex of the juror. *See Minniefield v. State* (1989), Ind., 539 N.E.2d 464, *reh'g denied.* Neutral means neutral with regard to the struck juror's group identity. *Id.* The focus of inquiry is the facial validity of the challenged party's explanation. Unless a discriminatory intent is inherent in the challenged party's explanation, the reason offered will be deemed neutral. *Currin,* at 1323 citing *Hernandez,* 500 U.S. at 358–60, 111 S.Ct. at 1866. However, the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact which is accorded great deference on appeal. *Taylor v. State* (1993), Ind.App., 615 N.E.2d 907. *Atkins v. State* (1990) Ind.App., 561 N.E.2d 797, 800, *trans. denied.*

In this case, contrary to Koo's assertion, his explanations for challenging both prospective female jurors were not facially neutral. Rather, the explanations were a mixture of neutral reasons as well as reasons that can be only described as gender biased. Because of our deferential standard of review we cannot conclude that the trial court erred in refusing to allow Koo to exclude the two prospective jurors by way of peremptory challenges.[4]

1319, n. 4. Although *Batson* requires counsel to articulate a neutral reason for its strikes once a prima facie showing of discrimination has been established, often it is impossible to do so. A peremptory challenge is sometimes exercised on hunches and impressions perhaps having to do with a prospective juror's habits, associations, or bare looks. *Merritt v. State* (1986), Ind., 488

Finally, Koo contends that the trial court's remedy in disallowing the use of the peremptory challenge was not a sufficient remedy for the wrong which *Batson* seeks to prevent. According to Koo the trial court should have either reinstated all of the improperly struck jurors, or declared a mistrial, discharged the entire panel, and chosen a panel free from any taint. We disagree. As Koo correctly points out the *Batson* court specifically noted:

> In light of the variety of jury selection practices followed in our state and federal trial courts, *we make no attempt to instruct these courts how best to implement our holding today.* For the same reason, *we express no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors,* for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, [cit. omitted] *or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire* [citation omitted].

*Batson*, 476 U.S. at 99, n. 24, 106 S.Ct. at 1725, n. 24 (emphasis added). Clearly, the remedy which a particular trial court employs upon a finding of purposeful discrimination is a matter left to the court's discretion. Koo has demonstrated no abuse of discretion on this issue and we find no error.

### III.

Koo next contends that the trial court erred in allowing two witnesses to testify regarding alleged prior uncharged acts of sexual misconduct. According to Koo the trial court erred in admitting the evidence because its probative value was outweighed by its prejudicial impact and because the evidence does not fall within an articulated exception to the general rule disallowing such evidence.

At issue is the testimony of M.K. and S.P., both former patients of Koo. M.K. testified that in January, 1983, when she was twelve-years-old, she was present in Koo's office because of an ear infection. While in the examination room with her mother, M.K. asked Koo to prescribe diet pills for her because she was overweight. Koo advised M.K. that he would have to give her a "hormone smear" and instructed M.K.'s mother to leave the room. M.K. undressed and sat on the examining table. Koo placed a sheet over M.K.'s waist and taped a corner of the sheet to an overhead lamp. Koo then told M.K. that he would have to perform a test. After the test was completed M.K. heard the sound of a zipper. Shortly thereafter M.K. used the rest room and discovered semen in her vaginal area.

The other witness, S.P., testified that in 1984, she was present in Koo's office for an examination. Koo asked her to undress and she did so by removing her slacks. Koo then gave S.P. an injection in her arm which made her lethargic. While S.P. lay on the examination table, Koo taped her legs to the stirrups and taped a cloth onto an overhead lamp. Koo then had sex with S.P. against her will.

---

N.E.2d 340, 341. Simply because counsel may not be able to articulate reasons for a peremptory strike in the face of a *Batson* challenge does not necessarily mean the strike was race (or gender) based. As Justice O'Connor observed in her concurring opinion in *J.E.B. v. Alabama ex rel. T.B.* (1994), — U.S. —, —, 114 S.Ct. 1419, 1431:

> The peremptory challenge is ... "part of our common law heritage." [citation omitted].
> .... "Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of eliminat[ing] extremes of partiality on both sides, thereby assuring the selection of a qualified and unbiased jury." [citation omitted] ... Moreover, "[t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry

and without being subject to the court's control." [citation omitted]. Indeed, often a reason for it cannot be stated, for a trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's ... "'bare looks and gestures.'" [citation omitted]. That a trial lawyer's instinctive assessment of a juror's predisposition cannot meet the high standards of a challenge for cause does not mean that the lawyer's instinct is erroneous [citation omitted]. Our belief that experienced lawyers will often correctly intuit which jurors are likely to be the least sympathetic, and our understanding that the lawyer will often be unable to explain the intuition, are the very reason we cherish the peremptory challenge.

S.P. also testified that Koo sexually assaulted her on five subsequent occasions giving her an injection of some sort prior to each incident.

Over timely objection by the defendant, the trial judge admitted the foregoing testimony into evidence based on an exception apparently recognized in federal practice as the "corpus delicti" exception. At the time of trial the rules of evidence then existing generally excluded evidence of prior sexual misconduct unless the evidence was offered to show motive, opportunity, intent, preparation, plan, knowledge, depraved sexual instinct, identity or absence of mistake. *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 128; *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1346. Corpus delicti was not an articulated exception to the general rule prohibiting extrinsic offense evidence. Further, as the trial court correctly observed, the recognized exceptions were not applicable here. The trial court clearly erred in admitting the testimony of M.K. and S.P. However, because the extrinsic offense evidence would be admissible on remand under the newly adopted Indiana Rules of Evidence, any error is harmless.

In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, our supreme court officially adopted Federal Rule of Evidence 404(b) as the rule governing the admissibility of uncharged misconduct in Indiana. Indiana Evidence Rule 404(b) dictates in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident …

This rule generally allows the admission of extrinsic offense evidence and only excludes it where the uncharged misconduct is used for the sole purpose of suggesting to the jury that the defendant possesses certain character traits and acted in conformity with those character traits in the present, charged crime. *Hardin,* 611 N.E.2d at 128.

Prior misconduct may be admitted to rebut a specific factual claim raised by the defense.

For example, in *U.S. v. McAnderson* (7th Cir.1990), 914 F.2d 934, the defendants, on trial for terrorism and possession of illegal firearms, asserted that their organization was a social and religious organization. The prosecution submitted evidence that the group had been involved in drug transactions. The court said that the prior misconduct was properly admitted to rebut the defense's statements that the organization was religious and social in nature.

Similarly, in *U.S. v. Beltempo* (2nd Cir. 1982), 675 F.2d 472, *cert. denied* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353, the court also admitted prior acts evidence to rebut a factual claim by the defendant. In that case, defendants were on trial for conspiring to import heroin into the United States from Italy. The prosecution admitted evidence that one of the defendants, Giuseppe Gallina, had deposited a check for $20,000 three years before the crime at issue was committed. On appeal, Gallina contended that this evidence tended to show the commission of a prior criminal act. The court upheld the admission of the evidence because it tended to rebut the defense's claim that Gallina was a poverty-stricken butcher who traveled to Italy occasionally for health reasons.

This case is similar to both *McAnderson* and *Beltempo* in that the defendant introduced substantial evidence to suggest that the victim hallucinated the sexual encounter. During his opening statement, defense counsel stated that the victim was a heavy user of both Codeine and Valium, drugs that he said could cause sexual hallucinations. When questioning the pharmacist who had spoken with the victim immediately after the rape, the defense attorney asked if the victim's shaking hands were an "indication of someone who is going through some type of withdrawal?" *Record* at 1541. Several of Dr. Koo's former patients testified that the doors in the office were different than the victim had described, which the defense suggested was an indication that the victim had hallucinated the event. Defense counsel cross-examined two pharmacists on the possible hallucinatory effects of Valium and Codeine. On direct examination, defense counsel ques-

tioned a pharmacist, a family physician and a pharmacologist on the hallucinatory properties of these drugs and the possible potentiation [5] when the drugs were taken together. To present a picture of the victim as a heavy drug user, the defense questioned the two pharmacists who had filled the victim's prescriptions concerning the frequency with which the victim refilled her prescriptions during the two months before the rape. Also in closing argument, defense counsel stated, "I am offering you some possibilities to explain, possibilities of she is mistaken because of drugs, ... the possibilities of hallucination ..." *Record* at 4021–22. Clearly, the defense had presented a specific factual claim of hallucination that the prosecution was entitled to rebut with evidence of prior misconduct.

However, even if the evidence is admissible under Evid.R. 404(b) to rebut a specific factual claim raised by the defense, the evidence still must meet the test of Evid.R. 403. *See Hardin*, 611 N.E.2d at 129. That is, if the prejudicial effect of presenting the evidence substantially outweighs its probative value, the evidence should not be admitted. *Id.* Here, evidence of Koo's prior acts is highly probative. There were no witnesses to this crime and the rape test was inconclusive. Furthermore, because the other incidents contain many of the details present in this case, the evidence lends credence to the victim's story. However, the fact that there were no witnesses to the crime also renders the evidence prejudicial to the defendant. Nevertheless, any potential prejudice was minimized by the final jury instructions. The trial judge instructed the jury to use the testimony of M.K. and S.P. only for the limited purpose for which it was admitted, to "hel[p] you in deciding if the testimony of [the victim] regarding the events of March 30, 1989, was based on fantasy or reality." *Record* at 390. The court further cautioned the jury that "[t]he defendant is on trial only for the alleged rape of [the victim].... A defendant may never be found guilty of one offense just because he may be guilty of another." *Record* at 390. In sum, we cannot

say that the danger of prejudicial effect outweighs the probative value of this evidence.

### IV.

Koo next complains that the trial court erred by refusing to allow him to introduce testimony of the victim's discussions with her attorney regarding settlement negotiations related to a civil lawsuit as well as alleged settlement negotiation concerning the instant criminal charge against the defendant.

The record shows the victim filed a civil lawsuit against Koo seeking money damages for injuries she sustained as a result of the sexual assault. During a pre-trial deposition on the criminal charge, the victim's attorney refused to respond to questions concerning any settlement negotiations that had occurred concerning the civil lawsuit. Counsel also refused to answer any questions concerning conversations he may have conducted with his client. The negotiations and discussions purportedly included a specific dollar amount to resolve the pending civil litigation as well as the instant criminal charge. Koo filed a motion to compel the victim's attorney to answer the questions. During a hearing on the motion, Koo subpoenaed counsel for the victim to appear in court. Counsel took the stand and again refused to respond to any questions concerning the civil lawsuit. The motion to compel was denied.

On appeal Koo frames the issue as one of denial of his right to cross-examine a witness. His argument is misdirected because this is not a cross-examination issue. Rather, it is one of discovery about which the trial court has considerable discretion. *Patel v. State* (1989), Ind., 533 N.E.2d 580, 585. We will reverse only upon a showing of abuse. *Norris v. State* (1987), Ind., 516 N.E.2d 1068, 1070. Although the pendency of a civil suit is admissible to show bias and prejudice, the amount of damages does not bear upon such prejudice since the prayer for damages is frequently exaggerated. *Brooks v. State* (1973), 259 Ind. 678, 291 N.E.2d 559,

---

**5.** Defendant defined potentiation as the boosting effect of drugs that make the side effects more

profound. *Record* at 873.

560. Where the fact of the pending lawsuit is before the jury, the additional knowledge of the amount of money sought is unlikely to affect the jury's verdict. *Id.*, 291 N.E.2d at 561.

■ In this case the victim testified that she retained counsel to represent her in a civil lawsuit against Koo. She also testified that she was seeking monetary damages. Koo's argument that the trial court erred by excluding specific testimony relating to the dollar value which the victim had indicated would be sufficient to settle the civil and criminal cases lacks merit. The jury knew that a civil suit had been filed. The dollar amount sought was not likely to affect the jury's verdict. We find no error here.

## V.

Next, Koo contends the trial court erred by refusing to allow him to pursue additional discovery concerning whether the victim made allegations of rape against other persons. This contention is based upon Koo's pre-trial motion to compel the victim to answer specific questions concerning supposed allegations that she had accused a former boyfriend of rape. The trial court denied the motion and at trial refused to allow Koo to introduce evidence concerning the supposed allegations.

■ Indiana's Rape Shield Act prohibits the admission of evidence relating to a rape victim's sexual history. Ind.Code § 35-37-4-4. There is an exception that applies only where (1) the victim has admitted that she made a prior false accusation of sexual misconduct, or (2) her prior accusation is demonstrably false. *Stewart v. State* (1988), Ind., 531 N.E.2d 1146, 1149.

■ During a hearing outside the presence of the jury Koo questioned the victim as to whether she had ever accused anyone of rape other than Koo. In response the victim testified that in 1988, she went to the Hammond Clinic because of a "forced sexual encounter" with a former boyfriend. She also testified, "In my mind, it wasn't rape, but the Hammond Clinic might have put it down— might have construed it as rape, but in my mind, it wasn't." *Record* at 1335. According

to Koo, both of the *Stewart* exceptions are present here and therefore the trial court erred in denying additional discovery of and the admission of testimony regarding this sexual encounter. We disagree. The victim did not admit she ever made a prior false allegation of sexual misconduct. To the contrary, she clearly testified she never made the allegation although clinic personnel may have interpreted it as such. Contrary to Koo's argument, a "forced sexual encounter" does not fall within the statutory definition of rape. *See* Ind.Code § 35-42-4-1.

## VI.

Koo next contends that the trial court erred in denying his motion to correct errors based on newly discovered evidence. Specifically, following trial one of the witnesses in the case told Koo's attorney that the victim's sister had admitted that she lied about the extent of the victim's drug use. According to Koo this assertion amounts to newly discovered evidence which entitles him to a new trial. We disagree.

■ In order to obtain a new trial based upon newly discovered evidence, Koo must show that the evidence: 1) has been discovered since the trial; 2) is material and relevant; 3) is not cumulative; 4) is not merely impeaching; 5) is not privileged or incompetent; 6) due diligence was used to discover it in time for trial; 7) is worthy of credit; 8) can be produced on a retrial of the cause; 9) it will probably produce a different result. *Thomas v. State* (1990), Ind.App., 562 N.E.2d 43. In determining whether evidence would produce a different result, the judge may consider the weight that a reasonable trier of fact would give it, and while doing so may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial. *Fox v. State* (1991), Ind., 568 N.E.2d 1006, 1007.

■ The evidence here is merely impeaching and would not likely produce a different result. During the course of trial the jury heard evidence that the victim was a heavy user of Valium, a prescription drug. There was also considerable testimony of the

adverse effect Valium may have on a person when used excessively. Thus, the jury knew of the victim's drug use and any additional evidence on this point would not have changed the result of the trial. The trial court properly denied Koo's motion for a new trial.

## VII.

Koo next contends that the trial court erred by denying defense counsel's motion for an order authorizing post-trial jury contact. The facts are as follows. After the jury rendered its verdict Koo filed a motion seeking to contact jury members to determine if the jury had considered improper matters, other than the evidence presented at trial or whether they were exposed to improper extrinsic materials during their deliberations. Attached to the motion was an article from a local newspaper describing a discussion a reporter had held with one of the male members of the jury. According to the alleged anonymous juror, "if it had been an all-male jury, some of the men definitely would have definitely had to be in touch with their feminine side." *Record* at 431. The juror also allegedly said "all the guys did admit that without the women [jurors] giving their viewpoint and feelings in these situations, we would have had a much harder time." *Record* at 431.

▆▆ Koo acknowledges that Indiana adheres to the common law rule that a verdict may not be impeached by evidence from the jurors who return it. *Stinson v. State* (1974), 262 Ind. 189, 313 N.E.2d 699. However, citing *Harrison v. State* (1991), Ind.App., 575 N.E.2d 642, Koo argues that a juror can testify about events which transpired during the trial and a juror's testimony or affidavit may be considered by the court to show the jury's exposure to improper or extrinsic ma-

terials during their deliberations. Thus, Koo concludes, the trial court's denial of his motion for post trial contact with a juror emasculates the holding in *Harrison.*[6] We disagree.

In *Harrison,* the defendant appealed the denial of his petition for post-conviction relief. One of the issues raised on appeal was whether the post-conviction court erred by not considering as evidence testimony and affidavits of jurors regarding the existence and nature of their conduct with the bailiff. The facts of that case revealed that following trial, one of the jurors informed Harrison that the jury had received a sheet of paper from the bailiff during deliberation. At the post-conviction hearing Harrison introduced the juror's testimony along with the testimony of the jury foreman. In addition, he introduced the affidavits of four additional jurors. In sum, the jurors confirmed that the bailiff had had contact with the jury during their deliberations. The post-conviction court admitted the testimony and affidavits over the State's objection, but took the evidence under advisement pending a final determination of its admissibility. Citing the long standing rule that jurors' testimony and affidavits are inadmissible to impeach the jury verdict, the post-conviction court refused to consider the evidence and thus concluded Harrison had not met his burden of showing jury contact by the bailiff. On appeal we reversed and remanded with instructions to the post-conviction court to consider the excluded testimony and affidavits. In so doing we noted a juror's testimony or affidavits may be considered by the court to show the jury's exposure to improper or extrinsic materials during their deliberations. *Harrison,* 575 N.E.2d at 646.

---

6. Koo also complains that he was compelled by Rule 3.5 of the Rules of Professional Conduct to seek trial court approval for post trial juror contact. The Rule provides in pertinent part: "A lawyer shall not: (a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (b) communicate ex parte with such a person except as permitted by law; or (c) engage in conduct intended to disrupt a tribunal." Other than to explain that this provision was the reason he sought court approv-

al for the post trial jury contact, Koo does not make clear what bearing this provision has on the issue before us. In any event it would appear that the prohibition against ex parte communication with a "juror" or "prospective juror" does not extend to a person who previously served as a juror. It is axiomatic that once a person has been excused from jury duty, he or she is no longer a juror or prospective juror as those terms are used in the Rules.

■ The facts here are distinguishable. In this case Koo does not contend the jury was exposed to improper or extrinsic materials during their deliberations. Nor did a juror approach Koo with any such information. The newspaper article, on which Koo's motion was based, suggested nothing more than the interactive thought process that flowed between jury members during deliberation. The jurors obviously discussed the case and were influenced by one another. Clearly, this freedom of discussion is a necessary component of our system of justice and is thus protected by the common law rule prohibiting a jury from impeaching its verdict. *See Knight v. Parke* (1992), Ind.App., 595 N.E.2d 280.

Post trial jury contact by attorneys representing either side in litigation is a common practice in this State and largely rests within the trial court's broad discretion. Such contact should not be discouraged where it is used as a learning tool to assist counsel in subsequent cases. However, post-trial jury contact may not be employed as a fishing expedition in an effort to obtain evidence in an attempt to impeach the jury's verdict. As this court observed in *Knight*, 595 N.E.2d at 281:

> [If] verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication [, then] all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

*Id.* citing *McDonald v. Pless* (1915), 238 U.S. 264, 267–68, 35 S.Ct. 783, 784, 59 L.Ed 1300. The trial court did not err in denying Koo's' motion for an order authorizing post-trial jury contact.

## VIII.

Finally, Koo complains "[i]t was manifestly unreasonable for a first-time offender, a doctor in his community, and a person with the support of professionals, family and friends, to receive a twenty (20) year sentence . . ." *Brief of Appellant* at 46.

■ Sentencing decisions rest within the sound discretion of the trial court. The decision will be reversed on appeal only upon a showing of abuse of discretion. *Duvall v. State* (1989), Ind., 540 N.E.2d 34. If the sentence is within the statutory limits, it will not be altered unless it is manifestly unreasonable in light of the nature of the offense and character of the offender. *Ferrell v. State* (1991), Ind., 565 N.E.2d 1070. A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender for which the sentence was imposed. *Id.*

■ Here the trial court imposed the maximum sentence allowable by statute. In so doing, the court noted that Koo was a physician who used his position to gain the trust of his patient before raping her under the guise of a necessary medical procedure. The court also listed as an aggravating factor that Koo used his medical expertise to subdue the patient before engaging in the criminal conduct. Also by virtue of his confidential relationship with the victim, Koo knew that she had been a victim of sexual abuse as a child. The court said it could be inferred that the attack was premeditated and that Koo chose a vulnerable victim.

The court listed as a mitigating factor the fact that Koo elected to enter into a profession to help others. During his medical career, Koo performed numerous acts of kindness to some of his patients. And finally, sending Koo to prison for twenty years would result in undue hardship on his patients in the event that he was allowed to keep his medical licenses.

■ Given the facts of this case, including the nature of the crime and the character of the offender, we cannot say the sentence was manifestly unreasonable. A trial court may rely on a single aggravating factor to

enhance a presumptive sentence. *Duvall,* 540 N.E.2d at 36. In this case the trial court listed numerous aggravating factors. We find no abuse.

Judgment affirmed.

SHARPNACK, C.J., concurs.

BARTEAU, J., concurs with separate opinion.

BARTEAU, Judge, concurring.

While I concur with the majority opinion, I do so as to Issue II with some hesitation. It is true that we must accord great deference to the trial court's determination that a discriminatory intent exists. *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395. However, it is also true that if a discriminatory intent is not inherent in the challenged party's explanation, the reason offered will be deemed neutral. *Id.* Here, the majority correctly notes that the explanations were a mixture of neutral reasons as well as gender-based reasons. Particularly in a case such as this the trial court must guard against unnecessarily limiting the use of peremptory challenges, lest the right to make peremptory challenges becomes a right in theory only. While I might have decided differently than the trial court did on this issue, because we must accord its decision great deference on what amounts to a question of fact, I concur with the majority's resolution of Issue II.