## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Appellate Division
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andre Thomas Scott,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

January 14, 2019

Court of Appeals Case No.
18A-CR-1195

Appeal from the Lake Superior Court

The Honorable Clarence D. Murray, Judge

Trial Court Cause No.
45G02-1601-MR-1

**Brown, Judge.**

[1] Andre Thomas Scott appeals his conviction and sentence for attempted robbery as a level 2 felony. He raises three issues which we revise and restate as:

    I.    Whether the evidence is sufficient to sustain his conviction;

    II.    Whether the trial court abused its discretion in sentencing him; and

    III.    Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

### Facts and Procedural History

[2] In July 2015, Elandra Barron was in a relationship with Antoine Scott ("Antoine"). On July 15, 2015, Barron saw Antoine at her cousin's house drinking with people outside. Barron told Antoine that she did not want to see him anymore. Antoine "smacked [Barron] on the back of [her] head and called [her] a B because [she] had [her] legs open." Transcript Volume IV at 16. Barron "got up and told him" not to put his hands on her, and Antoine punched her in the face. *Id.* Barron's brother, O'Bryan Brown, "got in between" Antoine and Barron and said, "bro, don't even, don't be on that." *Id.* at 17. Antoine said, "get the f--- out of my face." *Id.*

[3] Barron went in the house while others tried to stop Antoine from entering the house, but Antoine was "swinging on everybody outside." *Id.* Barron grabbed a knife, and told Antoine who had followed her to "get away from" her or she was going to stab him. *Id.* at 16. Antoine told Barron that she did not "have the balls and spit in [her] face." *Id.* Barron and Antoine "got to fighting again,

and [she] was swinging the knife, and in the process [Antoine] got stabbed." *Id.* At that time, Brown and others were in the kitchen with Barron. The others in the kitchen told Barron to "just get in [her] car and go because he wouldn't leave," and they could not "fight him off." *Id.* Antoine "hauled off and punched" Brown and told him he did not want anybody touching him. *Id.* Barron tried to obtain her keys, go outside, and enter her car, but she dropped her keys. Antoine took her keys and would not return them. "[E]verybody was trying to talk to [Antoine] like, just give her her keys so she can go." *Id.* at 17.

[4] Brown took Barron to Methodist Hospital where Antoine's friend, Lothar Sickles, was already in the waiting room. Sickles approached Barron and told her that she almost killed Antoine and that it was her fault. Brown "got in between" Sickles and Barron and told him "he shouldn't be putting his hand on her, so she defended herself." *Id.* at 18. Sickles said, "one phone call, that's all it takes." *Id.* Hospital security then told Sickles that he had to go sit down.

[5] That same day, Tia Thompson, a paramedic, received a dispatch and found Brown unresponsive in an alley about two blocks from Methodist Hospital with blood coming from his nose and mouth. A person at the scene told Thompson that Brown had been jumped by two people. Thompson transported Brown to Methodist Hospital where he was on life support and airlifted to Christ Advocate Hospital in Illinois. As Barron was leaving Methodist Hospital, she saw Sickles, Clarence White, and Scott in a truck. On July 16, 2015, Brown was removed from life support and died. An autopsy revealed the presence of a large subdural hemorrhage covering almost the entire left half of Brown's brain.

The medical examiner determined that Brown died of cranial cerebral injuries due to blunt force impacts to the head.

[6] A police investigation revealed that Sickles called Scott to tell him that his brother, Antoine, had been in a fight involving Brown and had been injured. Police also obtained security video showing two individuals later identified as White and Scott chase Brown down an alley. The video showed that White caught up with Brown and punched him, appearing to knock him unconscious. It also shows that Scott then stomped on Brown, searched his pockets, struck him, searched him again, picked him up and threw him, and kicked him.

[7] On January 28, 2016, the State charged Scott with: Count I, murder; Count II, murder in perpetration of robbery; Count III, attempted robbery as a level 2 felony; Count IV, aggravated battery as a level 3 felony; and Count V, involuntary manslaughter as a level 5 felony.

[8] On January 29, 2018, and February 2, 2018, the court held a jury trial. The jury found Scott not guilty of murder in perpetration of a robbery and guilty of involuntary manslaughter as a level 5 felony, attempted robbery as a level 2 felony, and aggravated battery as a level 3 felony.

[9] In March 2018, the court held a sentencing hearing. The prosecutor asserted that the presentence investigation report ("PSI") indicated that Scott denied any affiliation with a gang and that the State had witnesses that would show Scott was a gang member. Gary Police Detective Samuel Abegg testified that he heads up the gang unit, that Scott's name had come up several times over the

years in connection with a gang that calls itself the Bottom Side Crew or the Dollar Boys. He testified that Scott is a member or an individual who associates with that particular crew. He described the hand symbol associated with the gang, examined three photographs, and testified that Scott was in the three photographs. The court admitted the three photographs over Scott's objection. Detective Abegg testified that Scott was doing the symbol he had just demonstrated in the first photograph, that people were throwing up gang signs in the second photograph, and that Scott was doing the same gesture in the third photograph.

[10] The prosecutor asserted that Scott had been incarcerated in the Lake County Jail for over 600 days and that during his incarceration he had accumulated a "55 page list of infractions that have gone wrong" including cutting off his wristband, refusing to lock down, cursing and harassing staff by using a racial slur, stealing a tablet, attempting to jam a plastic item in his door to prevent it from closing, fighting, threatening people, and inciting a riot. Transcript Volume VI at 24. The trial court admitted a fifty-five page document including disciplinary records over Scott's objection. Scott apologized to Brown's family for the role he had in the incident and stated that he never intended to kill Brown.

[11] The court vacated the judgment of conviction for Counts I and IV based on double jeopardy and affirmed the judgment of conviction on Count III, attempted robbery as a level 2 felony. It found that Scott had expressed sincere

remorse for his crime as a mitigating circumstance. The court found the following aggravating circumstances:

1. [Scott] has a history of misdemeanor convictions.

2. [Scott] was on bond, house arrest, and on ICU monitor in Cause No. 45G02-1504-F1-00002 at the time of the commission of the offense.

3. The Court finds the nature and circumstances of the crime to be a significant aggravating factor in that [Scott] chased, battered and attempted to rob the victim in broad daylight in an alley in midtown Gary. The victim was left for dead and in fact did die the following day after being airlifted to a hospital in Chicago. The victim suffered severe hemorrhaging and swelling to the brain. This was an act of revenge on the part of [Scott] who was under the mistaken belief that the victim had something to do with an alleged act of violence upon his brother.

4. The victim was prostrate in the street and unconscious at the time [Scott] kicked, beat, and attempted to rob him.

5. [Scott] has numerous prior contacts with the criminal justice system involving arrests for violent offenses.

6. [Scott] has had past gang involvement.

7. [Scott] had numerous infractions while incarcerated in Lake County Jail, over 55 pages of reports.

The Court believes [Scott] to be possessed of a very violent nature and depraved moral character.

Appellant's Appendix Volume II at 199-200. The court sentenced Scott to twenty-seven years with two years suspended to probation.

*Discussion*

I.

[12] The first issue is whether the evidence is sufficient to sustain Scott's conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[13] The offense of robbery is governed by Ind. Code § 35-42-5-1, which provided at the time of the offense that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Level 5 felony," and the offense is a level 2 felony "if it results in serious bodily injury to any person other than a defendant."[1] An attempt is defined by Ind. Code § 35-41-5-1, which provides in part that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." "An attempt to commit a

---

[1] Subsequently amended by Pub. L. No. 202-2017, § 25 (eff. July 1, 2017).

crime is a felony or misdemeanor of the same level or class as the crime attempted." Ind. Code § 35-41-5-1.

[14] Scott argues that there was no indication of any intent to rob Brown until all of the injuries had been inflicted on him. He asserts that the lack of a causal connection between the robbery and the serious bodily injury means that there was not sufficient evidence to convict him of a level 2 felony. He requests that we reverse his conviction and remand with instructions to enter a conviction of attempted robbery as a level 5 felony and resentence him accordingly.

[15] The State argues that a defendant's conviction for level 2 felony robbery does not turn on the precise order in which the component events of his crime occurred. It asserts that "[i]rrespective of whether [Brown] was last conscious before or after Scott began searching his pockets, he was still alive at the time Scott used force to attempt a taking, and the injuries that eventually claimed his life were the cumulative result" of the harm inflicted by Scott and White during the attempted robbery. Appellee's Brief at 15-16. The State also contends that Scott's attempt to rob Brown and the injuries that led to his death occurred as part of a single, continuous event.

[16] In *Minniefield v. State*, 539 N.E.2d 464 (Ind. 1989), *reh'g denied*, the Indiana Supreme Court addressed a similar argument. In that case, Michael Guiden was exiting his car when he was accosted by Nathan Minniefield and Calvin Hill and ordered at gunpoint to lie down on the front seat. 539 N.E.2d 464 at 465. "Guiden was searched and relieved of the contents of his pockets,

including his wallet, money, some betting slips, and other papers." *Id.* "Guiden then was ordered to get into the back seat." *Id.* Minniefield and Hill drove away with Guiden in the back seat. *Id.* A short time later, Guiden escaped by jumping from the moving car and suffered injuries in the process. *Id.*

[17] On appeal from a conviction of robbery as a class A felony, Hill argued that the evidence was insufficient because the robbery had been completed by the time the victim sustained his injuries by jumping from the moving car. *Id.* at 466-467. Hill maintained that the victim's injuries did not result from the robbery, which consequently could not be elevated to a class A felony. *Id.* at 467. The Indiana Supreme Court held:

> His contention is clearly without merit. Aggravation by reason of resulting injury does not depend upon when a crime begins or ends, but rather depends upon the causation of the injury. Indiana Code § 35-42-5-1 states that robbery is "a Class A felony if it results in serious bodily injury to any person other than a defendant." Regardless of the intent of the perpetrator, if the injury occurs as a consequence of the conduct of the accused, the offense is regarded as a Class A felony. *Stark v. State* (1986), Ind., 489 N.E.2d 43.

> The injuries here resulted from the victim's escape from the robbers; but for the robbery, there clearly would have been no injury. The evidence was sufficient to support the conviction of robbery as a Class A felony.

*Id.* at 467.

[18] To the extent Scott cites *Birch v. State*, 569 N.E.2d 709 (Ind. Ct. App. 1991), we find that case distinguishable. In *Birch*, the defendant grabbed the victim, threw her into an alley, pulled out a knife, and demanded all of her money. 569 N.E.2d at 710. After she gave him her money, the defendant slapped her in the back of the head and said "Give me some pussy." *Id.* She refused, and he proceeded to attack her. *Id.* During the struggle, the victim's hands and throat were cut. *Id.* On appeal, another panel of this Court addressed the defendant's argument that the evidence was insufficient to sustain his conviction for robbery as a class A felony because the victim did not sustain serious bodily injury as a result of the robbery, but as a result of an attempted rape. 569 N.E.2d at 712. This Court ultimately held that "[s]ince the victim's serious bodily injury was the result of the attempted rape and not the robbery, defendant could not be convicted of robbery as a Class A felony."[2] *Id.*

[19] Unlike in *Birch* in which the injuries occurred after the victim had given up the money, the record reveals that Scott struck Brown contemporaneously with his attempted robbery. The video reveals that Scott struck Brown at approximately 4:50:04, stomped on Brown at approximately 4:50:11, searched Brown's pockets beginning at approximately 4:50:12, struck him at approximately

---

[2] Judge Staton dissented, stated that the majority misinterpreted the holding in *Minniefield*, and asserted that he would affirm Birch's conviction for robbery as a class A felony. *See Birch*, 569 N.E.2d at 713 (Staton, J., dissenting).

4:50:15, searched him again, picked him up and threw him at approximately 4:50:20, and kicked him at approximately 4:50:22.

[20] Based upon our review of the record, we conclude that the State presented evidence of a probative nature from which a trier of fact could find beyond a reasonable doubt that Scott committed the offense of attempted robbery as a level 2 felony.

## II.

[21] The next issue is whether the trial court abused its discretion in sentencing Scott. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[22] Scott appears to argue that the trial court abused its discretion with respect to finding the nature and circumstances of the offense as an aggravating circumstance. He asserts that the trial court "failed to recognize the existence of sudden heat when describing the nature of the offense." Appellant's Brief at 12. He also argues that the serious injuries and eventual death suffered by the victim constitute the element that elevated the offense to a level 2 felony, and an element of a crime may not be used as an aggravating factor. He also contends that the trial court improperly considered his past gang involvement.

[23] The State argues that the trial court properly considered the violent nature of Scott's crime as an aggravating factor and points out that death of a victim is not an element of robbery as a level 2 felony. It also asserts that it presented substantial evidence that Scott was a member of a gang at the time of the offense and the record supported the trial court's finding that Scott was affiliated with a gang. It contends that, even if the trial court improperly identified aggravating circumstances, any error was harmless.

[24] A material element of a crime may not be used as an aggravating factor to support an enhanced sentence. *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). However, when evaluating the nature of the offense, the trial court may properly consider the particularized circumstances of the factual elements as

aggravating factors. *Id.* *See also* Ind. Code § 35-38-1-7.1 ("In determining what sentence to impose for a crime, the court may consider the following aggravating circumstances . . . the harm, injury, loss, or damage suffered by the victim of an offense was . . . significant; and . . . greater than the elements necessary to prove the commission of the offense.").

[25] In its sentencing order, the court found the "nature and circumstances of the crime to be a significant aggravating factor" and detailed the nature and circumstances. Appellant's Appendix Volume II at 199. We conclude that the court considered the injuries not as material elements of the crime or sentencing enhancement but as the nature and circumstances of the offense. Consequently, we cannot say that the trial court abused its discretion. *See Caraway v. State*, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011) (holding that the trial court did not abuse its discretion by considering the nature and circumstances of the offense as an aggravator under Ind. Code § 35-38-1-7.1 where the victim was shot seven times), *trans. denied*; *Settles v. State*, 791 N.E.2d 812, 814-815 (Ind. Ct. App. 2003) (holding that facts evidencing the particular brutality of an attack may be considered as an aggravating circumstance when sentencing a defendant for aggravated battery and concluding that the trial court did not improperly consider the severity of the victim's injuries as an aggravator).

[26] With respect to the aggravating circumstance that Scott had gang involvement, we have previously observed:

> [C]ases where gang membership has been found to be a valid
> aggravator fall generally into one of two categories: (1) the
> instant offense is linked to a defendant's gang membership, *see,
> e.g.*, *Groves v. State*, 787 N.E.2d 401 (Ind. Ct. App. 2003) (finding
> consideration of gang membership to be proper aggravator in
> case where underlying offense was murder of rival gang
> member)[, *trans. denied*]; or (2) the defendant's gang membership
> is contemporaneous or close in time to the instant offense, *see,
> e.g.*, *Jackson v. State*, 697 N.E.2d 53 (Ind. 1998) (considering
> defendant's current gang membership as an aggravating factor).

*Carmona v. State*, 827 N.E.2d 588, 597 (Ind. Ct. App. 2005).

[27]   The State presented evidence of Scott's gang affiliation through the testimony of Detective Abegg and three photographs. Detective Abegg mentioned the gang that calls itself the Bottom Side Crew or the Dollar Boys and testified that Scott "is a member or an individual that associates with that particular crew." Transcript Volume VI at 8-9. Two of the three photographs admitted at the sentencing hearing show Scott in prison garb. We cannot say that the trial court abused its discretion in finding Scott's gang involvement as an aggravating circumstance. Even assuming that the trial court abused its discretion with respect to this aggravator, we can say with confidence that the trial court would have imposed the same sentence given the remaining aggravators.

### III.

[28]   The next issue is whether Scott's sentence is inappropriate in light of the nature of the offense and the character of the offender. Scott argues that the jury found

him not guilty of murder and that he was acting in sudden heat at the time of the offense. He asserts that the nature of the offense involved going through the pockets of an unconscious man and taking nothing. He acknowledges that he was on house arrest at the time of the offense but points out that the trial court found that he was remorseful. The State asserts that Scott's sentence was justified in light of the extremely violent nature of the crime and his character.

[29] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[30] Ind. Code § 35-50-2-4.5 provides that a person who commits a level 2 felony shall be imprisoned for a fixed term of between ten and thirty years, with the advisory sentence being seventeen and one-half years.

[31] Our review of the nature of the offense reveals that Scott chased Brown, struck Brown, stomped on him, searched his pockets, struck him again, searched him again, picked him up and threw him, and kicked him again. Brown died a day later.

[32] Our review of the character of the offender reveals that Scott, who was born in 1989, was charged with petit larceny as a misdemeanor in New York in 2007, but the PSI indicates no further information. In 2010, Scott pled guilty to

criminal trespass as a class A misdemeanor. That same year, he was charged under another cause number with criminal trespass as a class A misdemeanor but the case was dismissed. In 2012, charges of robbery resulting in serious bodily injury as a class A felony, aggravated battery as a class B felony, and two counts of battery resulting in serious bodily injury were dismissed. In 2013, charges of strangulation and pointing a firearm at another person as class D felonies were dismissed. In 2014, Scott was charged with no operator license in possession and pled guilty to the amended charge of an infraction. In 2014, he pled guilty to resisting law enforcement as a misdemeanor. That same year, he was charged with conversion as a class A misdemeanor, but the case was dismissed. In 2016, he pled guilty to battery as a misdemeanor. In 2018, Scott was charged under cause number 45G02-1504-F1-00002 ("Cause No. 2") with Count I, attempted murder as a level 1 felony, Count II, aggravated battery as a level 3 felony, and Count III, battery as a level 5 felony. The PSI indicates that a final pre-trial under Cause No. 2 was scheduled for March 8, 2018. The PSI lists pending charges related to an offense date of July 25, 2015, of Count I, failure to return to lawful detention as a level 6 felony, and Count II, criminal mischief as a class B misdemeanor. The PSI indicates that Scott's overall risk assessment score places him in the moderate risk to reoffend category.

[33] After due consideration, we conclude that Scott has not sustained his burden of establishing that his sentence of twenty-seven years with two years suspended to probation is inappropriate in light of the nature of the offense and his character.

[34] For the foregoing reasons, we affirm Scott's conviction and sentence.

[35] Affirmed.

Bailey, J., and Bradford, J., concur.